CROCKER V. DONOVAN, *County Treasurer, et al.*

[*Opinion Filed July 1, 1892.*]

1. TAXATION—*Homestead Improvements*—Under St.c. 75, § 3, providing for taxation of "improvements upon government lands," improvements made by homestead settlers on their claims are taxable.

2. PROPERTY OF UNITED STATES—*Organic Act*—Such improvements are not the property of the United States, and the act providing for their taxation does not violate Organic Act, § 56, providing that "no tax shall be imposed upon the property of the United States."

*Appeal from the District Court of Oklahoma County, Hon. J. G. Clark, Judge.*

Injunction by Samuel Crocker against W. J. Dono-

van, county treasurer, and Harry Bacon, L. N. De-
weese and J. L. Robertson, county commissioners, to
restrain collection of taxes  on improvement on plaint-
iff's homestad claim.  From a decree for defendants,
plaintiff appeals.  Affirmed.

*Henry W. Scott*, for Appellant.

*W. R. Taylor* and *Chas. R. Reddick*, for Appellees.

The opinion of the court was delivercd by

GREEN, C. J.: This was a bill in equity, in the district
court of Oklahoma county, brought by appellant, who
sued for himself and others, against appellee, Donovan,
as county treasurer, and appellees, Bacon, Dewees and
Robertson, as county commissioners, for the purpose of
enjoining the collection of certairi taxes.

The facts of the case will be best understood by set-
ting out the complaint in full, and which is as follows :

"Comes now above named plaintiff, suing for him-
self· and other persons similarly situated and inter-
ested, the said plaintiff suing for the benefit of all such
persons, for the cause of action herein alleges :

"*First:* That the said plaintiff and the other persons
similarly situated, and for whom he sues as well as for
himself, are residents of Oklahoma county, Territory of
Oklahoma, and that the interests of said plaintiff, Sam-
uel Crocker, in this cause of action are identical with
all the persons similarly situated, and for whom he sues.

"*Second:* That W. J. Donovan is county treasurer of
the county of Oklahoma, Territory of Oklahoma ; and
that Harry Bacon, L. N. Dewees and J. L. Robertson
constitute and are the board of county commissioners
of Oklahoma county, and Oklahoma Territory.

" *Third:* That the said plaintiff, Samuel Crocker, did
on the 24th day of April, 1889, make his homestead
entry No. 33, for the N. ½ of the N. E. ¼ of Sec. 33,
Tp. 12, N. of range 3 W., at the United States land
office at Guthrie, Oklahoma Territory, paid the price of
entry fee, and received therefor his receiver's duplicate·

receipt, and by virtue thereof, and his settlement, culti-
vation, and improvements made upon said described
land, in accordance with the requirements of the home-
stead laws of the United States, and the rules and reg-
ulations of the department of the Interior, governing
and controling the same, has an equitable interest
therein, but plaintiff states that the title to the said land
described is wholly and entirely in the United States of
America.

"*Fourth:* That the said plaintiff, Samuel Crocker,
has made upon said described land valuable improve-
ments, as follows, to-wit:    An orchard, consisting of
about two acres of said land described; forty-three and
one-half acres of said described land under cultivation ;
three hundred and fifty rods of three wire fence; a frame
house, consisting of six rooms and a cellar beneath ; a
cistern with a capacity of about seventy-five barrels ; a
chicken house, stable, and out-house; all of which said
improvements are permanent in their character, and are
attached to, and a part of the realty above described.

"*Fifth:* Plaintiff further alleges that the board of
county commissioners of Oklahoma county, as aforesaid,
have unlawfully and illegally levied, for the year 1891.
a tax upon the said improvements, permanent in their
character, and a part of the realty aforesaid, and caused
the said improvements to be assessed as the personal
estate of the said plaintiff, in the same manner and form
as that in which personal property is assessed by author-
ity of law in such cases made and provided, and the
same rate of taxation was levied and assessed against
these improvements as was levied and assessed against
all the personal property in Oklahoma county, and in
every manner and form the said improvements were
treated by the said commissioners and the authorities
in Oklahoma county as personal property of the said
Samuel Crocker.    The assessor aggregated the assess-
ment of such property to the sum of eight hundred dol-
lors ($800 00), and the amount of tax so levied on the
said improvements, as shown by the proper record of
Oklahoma county and the assessment rolls, aggregates
the sum of twenty-eight dollars ($28.00), being the
amount so levied and assessed as aforesaid against the
improvements upon said tract of land.

"*Sixth:* The plaintiff further alleges that there are a large number of persons similarly situated, and interested identically with himself, and who have made homestead entry, or are claiming equitable interests in homestead entries, and who have, the same as himself, made valuable improvements upon their said land, which said improvements are permanent in their character and are attached to and are a part of the realty which they severally claim, and that the title of the land in which they claim an equitable interest as aforesaid, is wholly and entirely in the United States; and that the said improvements made thereon are a part and parcel of the realty as aforesaid, and all of said persons are affected in the same manner, and the burden resting upon them is identical with the burden resting upon the plaintiff, Samuel Crocker, by reason of the wrongful and illegal levy and assessment made by the board of county commissioners upon their said improvements as set forth in this petition; that the said levy and assessment was made by the said board of county commissioners in the same manner and form as that in which personal property is assessed by authority of law in such cases made and provided, and the same rate of taxation was levied and assessed against all the improvements of those similarly situated with Samuel Crocker, as was levied and assessed against all the personal property in Oklahoma county, and in every manner and form the said improvements were levied and assessed by the said commissioners and authorities in Oklahoma county, as the personal effects of each and all of those so situated and interested as aforesaid; and plaintiff brings this action for all such persons, by their request, and by their consent, who have a common and general interest in the same, and that the said parties are so numerous that it is impracticable to bring them all before the court, and the said Samuel Crocker therefore sues for the benefit of the whole. And the plaintiff alleges that, if said defendants are not restrained by the court from taking any further proceedings to enforce said illegal, unlawful, and wrongful assessment and levy, that it will be necessary to bring a great many actions by such persons so interested and situated as aforesaid, to protect their inter-

·ests, and that much expensive, excessive and vexatious litigation will necessarily result.

"*Seventh:* The plaintiff further alleges that he him-·self has, and all those so similarly situated and inter-·ested as aforesaid have, tendered to the defendant, W. J. Donovan, the county treasurer of Oklahoma county, as aforesaid, the amount of the taxes upon their per-·sonal property, assessed against them in Oklahoma ·county, exclusive of the taxes levied and assessed upon these said improvements on the said lands in which they claim an equitable interest as aforesaid, but that the ·county treasurer has failed and refused to accept the ·same.

"*Eighth:* That the tax so illegally levied and as-·sessed against this plaintiff, and all those for whose ben-·efit he sues, did, on or about the 1st day of February, 1892, become an apparent lien upon all the said im-·provements, and that the said assessment and levy, cre-·ating an apparent lien as aforesaid, has never been dis-·charged or satisfied; and that the same is an apparent ·cloud upon the interests of the plaintiff, and all those similarly situated, in and to all of said property; and that the defendant, W. J. Donovan, as county treasurer ·of Oklahoma county, is threatening to, and has taken ·steps to collect said tax and will issue his warrant un-·der his hand, directed to the sheriff of Oklahoma county, commanding him to levy the amount of such unpaid assessment and a penalty thereon, together with the fees for said sheriff for executing the same, of the goods and chattels of the said plaintiff, and the others simi-·larly situated, to whom such taxes were assessed, and ·pay the same to said county treasurer, unless restrained by this court from so doing.

"*Ninth:* That the said assessment is wrongful and il-·legal because the said improvements, upon which the ·same is assessed, is a part of the realty, and the title of the said realty and the said improvements is wholly and ·entirely in the United States, and if the defendant is not restrained from proceeding as above stated against the plaintiff, Samuel Crocker, and all those similarly situ-·ated, for the payment of the said illegal, wrongful and unlawful assessment and levy, they will be put to great

loss, trouble and expense in protecting their rights in and to the said property, and they will suffer irreparable loss and injury; and a multiplicity of actions will result therefrom.

"Wherefore, the plaintiff demands judgment that said illegal, unlawful and wrongful levy and assessment be set aside and vacated so far as the same shall affect the rights and interests of this said plaintiff in the property hereinbefore described; and also so far as the same shall effect the interests and rights in their said property of the persons similarly situated and interested, and for whose benefit the plaintiff brings this action as well as for himself, and that in the meantime, and until the trial and determination of this action, that a temporary injunction be issued restraining the defendants, or either of them, from taking any steps whatever for the collection of said levy and assessment so far as the same is assessed upon the interests of the plaintiff, and all other persons for whom he sues, in Oklahoma county, as aforesaid; and that at the final determination of said action that a perpetual injunction issue, forever restraining the said defendants, or either of them, from attempting in any manner whatsoever the enforcement or collection of the aforesaid levy and assessment, in Oklahoma county, so far as the same affects the said plaintiff and others similarly situated, for whom he brings this action as well as for himself, and for such other and further order of relief as may be deemed equitable or just in the premises."

To this complaint appellees appeared and answered, and interposed the following defense:

"*First:* Deny that plaintiff in virtue of his alleged settlement, or improvements or cultivation of said land described in said complaint, or the making of the homestead entry therein specified, or either thereof, or otherwise has or ever had an equitable interest or any interest whatever in or to said lands; and deny that the improvements referred to in said complaint or any part thereof, are attached to or a part of the realty therein described.

"*Second:* And for the second, further and separate defense to said action, these defendants allege that

prior to the 22d day of April, 1889, the said plaintiff entered upon and occupied the lands described in the proclamation of the president of the United States dated March 23, 1889, and that the land in the complaint described is a part and parcel of and included in the lands specified in said proclamation, according to the government survey thereof; and these defendants allege that the plaintiff, nor any person or persons "similary interested identically with himself," for whose benefit he claims in his said complaint to institute this suit or either of them, never had and have not now any interest in said lands described or referred to in his said complaint, either legal equitable or otherwise.

"Wherefore, defendants pray that plaintiff take nothing by his said action and that they be hence dismissed with their costs."

On the pleadings, as thus formulated and filed, and without the introduction of any evidence, the cause was heard in the court below, and the following decree was rendered:

"And now, to-wit, on this 13th day of February, 1892, this cause came on for hearing on application of the plaintiff for an injunction as prayed for in his petition, and the defendants having filed their answer and duly plead to the merits of the cause, it thereupon came on for hearing on the merits upon the petition and answer, and the court after being fully advised in the premises, and after hearing the argument in the said case, and after duly considering the merits in said action, it is ordered, adjudged and decreed that the injunction prayed for in plaintiff's petition be denied and refused, and that the complaint filed herein be dismissed for want of equity at the cost of plaintiff."

To the rendition of this decree appellant at the time excepted, and prayed an appeal to this court, which was granted, and assigns, among others, the following errors:

"The court below erred in denying the injunction and relief prayed for by plaintiff, and those for whom he sued as well as for himself in his petition, and in rendering judgment against the plaintiff."

A number of questions are raised and discussed in appellant's brief, including the right of appellant to bring his suit and file his complaint in behalf of others as well as himself; but there is nothing in the record to show upon what particular ground the decree below was rendered, except that it was rendered upon the merits; and the question of equity on the face of appelant's bill assuming the facts as alleged therein to be true, is the only one that will be considered.

Appellant's contention is, that the improvements made by him upon his homestead, and described in his complaint, he being the homestead entryman, and in the actual use and possession of the homestead and improvements, are not taxable under the revenue laws, for the reason that such improvements are a part of the real estate and that the title is still in the United States, and that the property of the United States is exempt from taxation.

If the improvements made by appellant on his homestead are not taxable, it is because the legislative assembly had no power to impose taxes on that species of property; for the revenue code is sufficiently comprehensive to include all improvements made on government lands, whether permanent or otherwise; and the statute provides that "all property, whether real or personal," except as expressly exempted, shall be taxable. (Stat. Okla., Chap. 70, § 1, p. 1062.) And article 1 of this chapter enumerates the classes of property that shall be taxable, and the classes that shall be exempt; and the last clause of this article provides:

"All other property, real and personal, of any kind, including all improvements upon government lands, or lots not deeded."

And this is an express enactment that improvements made on government lands shall be taxed. (*Id.*, p. 1065.

As to the power of the legislative assembly to enact laws, it is granted and also limited by the organic act, the sixth section of which provides:

"That the legislative power of the Territory shall extend to all rightful 'subjects of legislation, not inconsistent with the constitution and laws of the United States; but no law shall be passed interfering with the primary disposal of soil; no tax shall be imposed on the property of the United States; nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents; nor shall any law be passed impairing the right to private property; nor shall any unequal discrimination be made in taxing different kinds of property, but all property subject to taxation shall be taxed in proportion to its value."

Within the limits here prescribed for the legislative assembly it had the power to tax *all property*, and unless the property described in appellant's complaint comes within the description, "property of the United States," it is not exempt, and the taxes imposed upon it should be enforced.

The argument, is however, that permanent improvements made upon a homestead, by the homestead entryman, become a part of the realty, and have no separate existence in contemplation of law, and can only be taxed with the real estate, and if the real estate is exempt from taxation, the permanent improvements are exempt also. And so it has been held by very high authority. (*Panker v. Windson*, 5 Kends, 374; *Chase County v. Shipman*, 14 Id., 532; *Lumber Co. v. Jones*, 32 Id., 195.

The rule of the common law undoubtedly is, that whatever is permanently affixed to the soil becomes a part of the soil; but should this rule obtain as between the homestead entryman or settlers, and the United States? And if he fail to acquire title to the land upon which he has made the improvements, may he not

remove them on surrendering the possession?    And
would the United States claim the improvements and
object to their removal?

The relation of the homestead entryman, who by his
entry at the land office has segregated the land from
the public domain to the land which he occupies and
improves, is *sui generis*, and does not exactly corres-
pond to any of the tenancies at common law, but has
more of the qualities of a tenancy for years, that is, for
five years; and the law is well settled that a tenant for
years, who erects buildings and other fixtures on land,
for the purpose of business and trade, is the owner of
the improvements, provided he removes them within
the term; and the right of removal extends to improve-
ments made for agricultural purposes as well as for pur-
poses of business and trade; and such improvements,
during the term, do not belong to the owner of the fee,
and are no part of the realty. (*Van Ness v. Pacard*,
2 Pet. 137; *Holmes v. Tremper*, 20 Johns, 29.

But should a tenant at any time during the term be-
come the owner of the fee, the permanent improve-
ments, *eo instanti*, would become a part of the realty,
and would cease to have a separate existence.    And
while the title to the land is in the United States, the
homestead settler or entryman should be regarded  as
the absolute owner of the improvements, which he may
sell and remove at leisure; and such improvements are
not the property of the United States.

Permanent improvements made upon public lands,
while the title was in the United States, by persons who
had settled upon such lands, have been recognized as
private property from an early day, and has been sub-
jected, by appropriate legislation to the claims of cred-
itors, the liens of mechanics, and to taxation; and have
been bought and sold by contracts which have been up-
held by the courts.

So a suit to enforce the lien cf mechanics against valuable improvements made upon public lands, in which the defense was pleaded that the title to the land was in the United States, and, for that reason, no lien attached to the improvements, the Supreme Court of Illinois said:

"The legislature has wisely seen fit to pass a variety of acts recognizing and affecting the interests in these possessions of the occupants of the public lands. The general government still retains the title to a great proportion of the land, in many of our populous and wealthy counties, on which are permanent improvements of great intrinsic value; and hence the necessity of passing laws adapted to property thus peculiarly situated. To allow a class of persons to hold and enjoy large fortunes beyond the search of their creditors was too shocking to a sense of justice to allow it to pass unnoticed by the legislature; and consequently it has, by repeated acts, treated these improvements as the proper subjects of transfer and ownership. They are made sufficient consideration for contracts and promises. Lands thus owned and occupied are treated as proper subjects for actions or trespass, forcible entry and detainers, forcible detainers and ejectment; and, indeed, throughout they are treated as the property of the individuals possessing them; and, as such, they are subject to the control and disposition of the law, so far as the occupant is concerned, as much as if he owned the fee, except, however, that no disposition can be made of them, so as to affect, in any way, a title which may be derived from the United States." (*Turney v. Saunders*, 4 Seam. 527.)

The same court, afterwards, in the case of *Sargent v. Kellogg*, 5 Gilm. 273, in speaking of the claims of settlers on the public lands, as recognized by statute, and in holding that the sale of such a claim constituted a valuable consideration for a promissory note, said;

"The possessory claims of settlers on the public lands have been recognized as valid, and the proper subject matter of sale and transfer, by various statutes of this

state, and the repeated decisions of this court." (*French v. Carr*, 2 Gilm. 664;) (*Switser v. Skiles*, 3 *Id.* 529.)

The Supreme Court of California, in its judicial utterances, is very pronounced in holding that possessory claims and improvements on public lands are proper subjects of taxation, and should be taxed for the support of the government which protects them, and says:

"These possessions, then, are recognized as a species of property subsisting in the hands of the citizen. It is not the land itself, nor the title to the land, nor is it the identical estate held by the United States. It is not the pre-emption right, but is the possession and valuable use of the land subsisting in the citizen; why should it not contribute its proper share, according to the value of the interest, whatever it may be, of the taxes necessary to sustain the government which recognizes and protects it?" (*People v. Shearer*, 30 Cal. 656.)

The county and city of San Francisco, under an act of the legislature, leased a portion of the school lot which belonged to the county and city, and the lessee took possession and erected a substantial four-story frame building, with brick foundation attached to the soil.

The building and improvements were assessed to the lessee, and suit was brought to recover the taxes. The real estate on which the improvements were made was. exempt from taxation, and the court said:

"It is not necessary to follow and answer in detail the various reasons given by defendant why he should not be held liable; it is sufficient to say that, for the purposes of revenue the legislature of this state has observed a distinction between real estate and improvements, and that distinction has been recognized by this court." (*San Francisco v. McGinn*, 7 Pac., Rep., 187.)

It has been uniformly and repeatedly held by the courts that improvements on the public land are not an interest in the real estate within the meaning of the statute of frauds, which requires all contracts for the purchase and sale of real estate, or any interest therein,.

to be in writing; and that such improvements may be sold and transferred without writing and wholly by parol. (*Frear v. Herdenbegh*, 5 Johns, 272; *Danf. rth v. Culver*, 11 *id.* 146; *Clank v. Shultz*, 4 Mo. 235; *Zickafosse v. Hulick*, 1 Morris, 175; *Pierson v. David*, 1 Iowa, 26.)

The statutes of Nevada provided for the taxing of "mining claims" on lands the title of which was in the United States; and the owner of such a claim brought his suit in the circuit court of the United States, for the district of Nevada, for the purpose of enjoining the enforcement of a tax levied upon his claim under the severe laws of that state, and it was held that such a claim was property in the fullest sense of the word, and liable to a lien for taxes, and the court said:

"They are property in the fullest sense of the word, and their ownership, transfer, and use are governed by a well defined code, or codes, of law, and are recognized by the states and the Federal government.

"This claim may be sold, transferred, mortgaged, and inherited without infringing the title of the United States.

"Why may it not also be made subject to a lien for taxes, and the claim, such as it is, recognized by statute, be sold to enforce the lien? We see nothing in the principle, or in any interest which the United States has in the land, to prevent it." (*Forbes v. Gracey*, 94 M. S., 762.)

Not only the courts, and state and territorial statutes, but congress itself has recognized, by appropriate legislation, the right of private property in improvements made on the public lands of the United States, and has provided:

"That when an occupant of land, having color of title, in good faith has made valuable improvements thereon, and is, in the proper action, found not to be the rightful owner thereof, such occupant shall be enti-

tled in the Federal courts to all the rights and remedies, and, upon instituting the proper proceedings, such relief as may be given or secured to him by the statutes of the states or territory where the land lies, although the title of the plaintiff in the action may have been granted by the United States after said improvements were so made." (Supp. R. S. p. 10.)

The public lands in the Territory of Oklahoma, that have been opened to settlement, except those occupied as townsites, have all been settled upon and entered under the homestead laws of the United States; and the legislative assembly, in providing for the taxation of "improvements upon government lands" had in view the taxation of all improvements made by homestead settlers and entrymen upon their respective homestead claims. And, as such improvements are not the property of the United States, whether permanent or otherwise, they are proper subjects of taxation and of legislation, and the legislative assembly had the power, for the purpose of revenue, to provide for taxing them as of the nature of personal property; and such taxation in no manner affects the title of the United States.

It follows that the decree of the district court must be affirmed.

Decree affirmed.

All the Justices concurring.