## ATKINSON v. KING et al.

No. 12134—Opinion Filed Oct. 23, 1923.

**1. Guardian and Ward—Guardian Sale —Confirmation—Collateral Attack.**

After the county court obtains jurisdiction of a guardianship sale proceeding, all irregularities and defects, except jurisdictional matters, between the acquiring of jurisdiction and the order of confirmation of the sale are cured by the order of confirmation, to the extent that the order of confirmation may not be collaterally attacked on account of such irregularities.

**2. Same—Fraudulent Sale—Setting Aside —Action by Ward Against Vendee.**

Where a guardian sells the lands of his wards upon a secret understanding with the purchaser that said purchaser is not to pay for the lands, but is to convey to the guardian certain real estate in lieu of the purchase price, such a sale constitutes fraud upon the estates of said ward, and the sale may be vacated and set aside in an action by the ward against such purchaser unless the title of the lands has become vested in a bona fide purchaser.

**3. Same—Bona Fide Purchaser.**

Where a guardian sells the lands of his ward in conformity with a fraudulent agreement or contract between the guardian and the purchaser, and the probate proceedings for the sale of said lands are regular upon their face, the title of said lands, under such sale, vests in the bona fide purchaser of the grantee at such guardianship sale without notice of the fraudulent contract or agreement.

**4. Same.**

The essential elements which constitute a bona fide purchaser are valuable consideration, the absence of notice, and the presence of good faith. The evidence examined in this cause, and the defendants held to be bona fide purchasers.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Grady County; Will Linn, Judge.

Action by Virginia Louise Atkinson against W. C. King, Hillsboro Bridge Guaranty Savings Bank, the Deming Investment Company, O. D. Hemming, W. D. Hemming, Lucy K. Hemming, and R. S. Brownlee. Judgment for the defendants, and plaintiff brings error. Affirmed.

Harry Hammerly, for plaintiff in error.

Bond, Melton & Melton, for defendants in error.

Opinion by JARMAN, C. Virginia Louise Atkinson, a minor, by her next friend, Mattie Atkinson, commenced this action in the district court of Grady county to recover certain real estate, and for the cancellation of deeds and mortgages held by the defendants. The cause was submitted to the court without a jury and judgment was rendered in favor of the defendants, from which the plaintiff brings error.

Virginia Louise Atkinson, plaintiff, is a minor allottee of the Chickasaw Nation and had allotted to her, as a member of the tribe of Chickasaw Indians, 218 acres of land. On June 18, 1913, C. E. Atkinson, the father of said plaintiff, entered into a written contract with the Yates & McClain Realty Company, a corporation of Colorado Springs, Colorado, whereby the said C. E. Atkinson agreed to exchange the

lands allotted to the plaintiff, and also the allotments of Thos. Jones Atkinson, Catherine Cain Atkinson, and Susan B. Atkinson, brother and sisters respectively of the plaintiff, for certain real property belonging to the said Yates & McClain Realty Company in Colorado. On June 24, 1912, C. E. Atkinson, pursuant to said agreement, filed a petition in the county court of Grady county for the appointment of himself as guardian of the plaintiff and her minor brother and sisters above named, and alleged as grounds for the appointment of himself as guardian:

"That it is necessary that a guardian be appointed for said minors * * * to take care of, manage and control and sell and exchange or improve said real estate as may be deemed beneficial to the interests of said minors, and invest the proceeds from said sale if the same be ordered sold."

After notice being given and a hearing being had, said C. E. Atkinson was appointed guardian of the persons and estates of said minors on June 29, 1912, and fixed the amount of guardian's bond for the four minors at $2,000, which bond was duly excuted and approved by the county judge and filed on July 1, 1912, and on the same day letters of guardianship were issued to said C. E. Atkinson as guardian of said minors. On July 29, 1912, said C. E. Afkinson, guardian, filed a petition for the sale of the allotments belonging to the plaintiff and her minor brother and sisters, and a total valuation of all four of the minor's allotments, as set up by the guardian in said petition, is $39,000, and grounds alleged in said petition for the sale of said lands are:

"Your petitioner would further show that all of the lands belonging to the four minors hereinbefore named should be sold and the proceeds derived therefrom put out at the interest or invested in productive stocks or other real estate as the court may deem right and proper to direct, for the reason that the expense of taking care of said lands as hereinbefore set forth amounts to as much as or more than the income derived therefrom, the said property can be sold well and advantageously at this time, and the profits derived therefrom can be put out at the interest on good security at the rate of 8% per annum, and your petitioner verily believes that the proceeds derived from said lands when put out at interest will produce twice the income that can be derived from the lands and premises belonging to said minors, and hereinbefore described, and your petioner alleges that the expense connected with said estates will be greatly reduced

and that said sale will be beneficial to and for the best interests of said minors."

A waiver of notice of hearing said petition to sell the lands of said minors was filed by the next of kin and persons interested in the estates of said minors, and a decree of sale was made by the county court on July 29, 1912, authorizing and directing the guardian to sell said lands for the following reasons, set out in said decree of sale, to wit:

"The court finds that the sale of the real estate belonging to said minors mentioned in said petition and hereinafter described is necessary and will be beneficial to and for the best interest of said wards, in order that the proceeds derived from the sale of said lands may be put out at interest. And the court further finds that said proceeds can be loaned upon good security for a fair rate of interest and that the proceeds derived from said sale of said lands when put out at interest will produce considerably more than the rents and profits derived from said lands."

The amount of the additional bond required to be given by the guardian is $1,000 for the four minors, which bond was given by the guardian and approved by the county judge and filed on August 31, 1912. After notice of sale of the lands belonging to said minors was given, a return of sale was made and filed by the guardian on September 7, 1912, in which it was shown that the lands belonging to the plaintiff, Virginia Louise Atkinson, a minor, were sold in separate parcels to John W. Yates and Jesse C. McClain for the aggregate sum of $6,145 cash, and that said purchasers were the highest bidders for said land, and that the amounts received are not disproportionate to the value of said land, and that a greater sum could not be had therefor, and that the same were sold at public auction as required by the decree of sale and as provided by the notice of sale of said land. Thereafter, upon due notice being given, the county court made and entered an order confirming said sale and a guardian's deed to said lands was duly executed by C. E. Atkinson to the purchasers, John W. Yates and Jesse O. McClain. The said John W. Yates and Jesse O. McClain, purchasers at the guardian sale, are members of, and interested in the Yates & McClain Realty Company; and all the proceedings had by C. E. Atkinson in the county court for the sale of the lands belonging to the said minors were in conformity with the contract entered into by C. E. Atkinson with the Yates & McClain Realty Company for the exchange of the lands of said

minors, as above mentioned; no cash consideration was paid by John W. Yates and Jesse C. McClain for the lands of these minors, but the real estate mentioned in the contract was exchanged therefor. On October 19, 1912, John W. Yates and Jesse O. McClain executed a mortgage to defendant Deming Investment Company for $2,500, and on November 22, 1912, the Deming Investment Company sold said mortgage and assigned the same to defendant Hillsboro Bridge Guaranty Savings Bank; on September 24, 1913, John W. Yates and Jesse O. McClain sold said lands and conveyed the same by warranty deed to defendant, C. C. Hemming, and on October 11, 1915, C. C. Hemming sold said land and conveyed same by warranty deed to defendant, W. C. King, and on October 30, 1915, said W. C. King executed a mortgage to C. C. Hemming on said land to secure a series of notes aggregating $1,150 . C. C. Hemming having died. his e ecutors, O. D. Hemming, W. D. Hemming, Lucy R. Hemming, and R. S. Brownlees, were made defendants.

The plaintiff alleged that by reason of the fraud practiced by the guardian and the purchasers at the guardian sale to dispose of these lands, that said guardian sale is void and conveyed no title to the purchasers, and that the irregularities appearing in the probate proceedings were such that the defendants, in dealing with said land, had constructive notice of the fraud practiced upon the plaintiff by the guardian and purchasers. The defendants filed answers denying that fraud was practiced on the plaintiff in the sale of said lands, and denying specifically that they had any notice, constructive or otherwise, of any fraud being practiced upon the plaintiff in the sale of said lands and alleging that they are purchasers for a considerable consideration and without notice.

When said cause came on for hearing in the district court of Grady county, the following agreed statement of facts was made and entered into by the plaintiff and defendants, to wit:

"It is stipulated and agreed as follows: That the contract, identified as plaintiff's exhibit 'A,' is a copy of the contract made and entered into by and between C. E. Atkinson, as father of the plaintiff herein, and the Yates and McClain Realty Company, of Colorado Springs, Colorado, and that pursuant to such contract, the said C. E. Atkinson applied to the probate court of Grady county, Oklahoma, and was appointed legal guardian of the plaintiff, and conducted a sale in said court pursuant thereto and that the said Yates and Mc-

Clain Realty Company, or the said Yates and McClain, individually, became the purchasers of said land at said probate sale; but that no money was paid, and the land in Colorado transferred and exchanged for the lands of plaintiff; that the defendants herein, W. C. King, C. C. Hemming and his heirs, the Deming Investment Company, and the Hillsboro Bridge Guaranty Savings Bank, had no actual notice of the existence of such contract, or of such exchange, and that unless there is sufficient defect in the probate proceedings to constitute constructive notice, and place them upon inquiry, which if pursued would have developed full knowledge of the facts, that they are innocent purchasers of said land for value without notice."

The plaintiff introduced in evidence the probate proceedings had in connection with the sale of the lands of the plaintiff; and the defendants introduced in evidence the mortgages and deeds they acquired to said land. The plaintiff insists that the trial court erred in rendering judgment for the defendants under the evidence in the case, and urges for a reversal of this cause one proposition, only, to wit: that there are sufficient irregularities shown in the probate proceedings to put an ordinarily prudent person upon inquiry which would have led to actual notice of the fraud perpetrated upon the plaintiff in the sale of her lands.

The plaintiff contends that by alleging in the petition for the appointment of a guardian that the appointment should be made to "exchange" the lands belonging to the plaintiff is sufficient to place the defendants upon inquiry, which, if made, would have developed the true facts, and the defendants would have known that the guardian sale was fraudulent. The plaintiff urges that the fact that guardian's bond of only $2,000 for all four of the minors was given and that an additional bond for the sale of the lands of all four minors in the sum of $1,000 was given, when the petition of the guardian to sell said lands recited that they were worth $39,600, are such gross irregularities appearing upon the face of the proceedings that the defendants are bound to take notice and make inquiry as to the good faith of the proceedings for the sale of said minor's land, and that the defendants cannot be heard to say that they are innocent purchasers for value without notice. There is no contention that the defendants had any notice of any irregularities pertaining to the guardian sale of the lands of the plaintiff, except such as are shown by the probate records.

It is conceded that the **proceedings** are sufficient on their face to vest the court

with jurisdiction to appoint C. E. Atkinson as guardian, and that such probate proceedings are sufficient to vest the court with jurisdiction to make sale of the lands of said plaintiff and the other minors, and there is no contention that said probate proceedings are not regular on their face. The court, in rendering judgment for the defendants, found that there were no irregularities appearing in the probate proceedins sufficient to put the defendants, in dealing with the lands of the plaintiff, on inquiry as to any irregularities or fraud practiced in connection with the guardian's sale of said land. There is only one question presented by this appeal, and that is, Is the judgment of the trial court that the defendants are innocent purchasers for value and without notice, supported by the evidence? The agreed statement of facts provides:

"* * * That unless there is sufficient defect in the probate proceedings to constitute constructive notice and place them (defendants) upon inquiry, which, if pursued, would develop full knowledge of the facts, that they are innocent purchasers of said land for value and without notice."

The fact that the word "exchange" is used in the petition for the appointment of a guardian, in connection with the handling of the land of the minors, is not such an irregularity, within itself, as to excite the suspicion or inquiry of any one contemplating dealing with these lands. The probate proceedings, which the defendants rely upon in procuring title to the lands in question, do not mention the word "exchange" at any place, except in the petition for the appointment of a guardian; the petition for the sale of the real estate, which is the instrument that sets out the reasons for disposing of the lands of the minor, did not make any reference to "exchanging" these lands; it is the petition to sell the lands that vests the county court with jurisdiction to make the sale, and it is this petition to sell that is looked to, to determine the reason for disposing of the minor's land; the petition to sell recites:

"* * * That the expense of taking care of said lands as herein-before set forth amounts to as much or more than the income derived therefrom, said property can be sold well and advantageously at this time and the proceeds derived therefrom can be put out at interest on good security at the rate of 8% per annum and your petitioner verily believes that the proceeds derived from said lands. when put out at interest will produce twice the income that can be derived from the lands and premises belonging to said minors, * * * and your

petitioner alleges that the expense in connection with said estates will be greatly reduced and that said sale will be beneficial to, and for the best interests of said minors."

These are sufficient grounds to authorize the court to make an order of sale of said lands, and upon a hearing to sell said lands being had, the county court did make and enter an order finding these facts to exist, and directed that said lands be sold for the reasons stated in the petition to sell, and afterwards a sale of the property was made by the guardian, as directed by the court in its order of sale, and a return of said sale was made by the guardian in which he recited that the lands of the plaintiff were sold at public auction, as directed by the order of the court, at the time and place designated in the notice of sale, for the aggregate sum of $6,145 cash, and that the purchasers were the highest and best bidders, and that the amount bid was not disproportionate to the value of the property, and that a greater sum could not be had therefor; thereafter, upon notice being duly given of a hearing upon said return of sale, the county court made and entered an order confirming said sale and finding that said sale had been legally and fairly conducted, and the lands had been sold as directed by the orders of the court and as provided by law, for the aggregate sum of $6,145 cash, and that said sum is not disproportionate to the value of said lands, that the purchasers were the highest and best bidders therefor, and that a greater sum could not be had for the lands.

In view of the regularity of these proceedings, which on their face show to be legal in every way, we cannot conceive of how a third person, ignorant of any secret understanding between the guardian and the purchasers, relative to the sale of said lands, could even have his suspicions aroused by the use of the word "exchange" in the petition for the appointment of a guardian. As to the contention that the guardian's bond and the additional sales bond are disproportionate to the value of the lands in question, the petition for the appointment of the guardian shows that the petitioner is the father of these minors and that the government's appraised value of their lands is $1,041, and the court fixed the amount of the guardian's bond at approximately twice that amount, $2,000, then how could a third person, innocent of any secret fraudulent contract, in reference to the sale of the lands of the minors, be put upon inquiry as to such fraud by the order of the court in fixing the guardian's bond

at $2.000 in the face of the allegations of the petition for the appointment of a guardian, as above set out? It is true that the petition to sell the lands of these minors recites that said lands are worth approximately $40,000, and the additional sales bond fixed by the court in the sum of $1,000 is, in fact, disproportionate to the value of said lands, but the fact that the court, not the guardian nor the purchasers, fixed the amount of this bond at $1,000 is not sufficient to place a third party upon inquiry as to fraud being practiced by the guardian and the purchasers. The record does not show, and it is not contended by the plaintiff, that the court was a party to this fraudulent scheme, and there is nothing to show that the guardian was attempting to defraud the minors in the filing of his petition to sell their lands, because he did all he could in setting out what he considered the true value of the property, which was approximately $40,000. The county judge, in fixing this additional sales bond, no doubt was influenced largely by the fact that the guardian was the father of these minors, and the county judge, therefore, felt that the sacred relation of father and child should be a sufficient bond for the conducting of the sale of the lands of these minors, for it ordinarily does not require any security to be given by a parent in connection with the discharge of his duty to his children; but, inasmuch as the law provides for the giving of an additional sales bond, the amount of which was to be left in the discretion of the county judge, the court fixed the amount of this additional sales bond at $1,000 to comply with the statutes. Innocent third persons, in dealing with these lands, had a right to look to the legality and regularity of the probate proceedings, and when it came to the consideration of this additional sales bond, third persons would not be put upon inquiry because the sale would have been regular and legal if no additional sales bond had been given, as held by this court, in the case of Carolina v. Montgomery, 74 Oklahoma, 177 Pac. 612, as follows:

"The failure of a guardian to file the additional sale's bond required to be filed prior to the sale of his ward's land, under an order of court is not jurisdictional, and the failure to file such bond is a mere irregularity."

When the county court acquired jurisdiction of the probate proceedings for the sale of the minors' land, than all irregularities and defects, after the acquiring of jurisdiction, are cured by the order of confirmation, so that said order of confirmation cannot be collaterally attacked on account of irregularities. Winters v. Oklahoma Portland Cement Co., 65 Okla. 132, 164 Pac. 965.

It is conceded that the probate proceedings are sufficient to vest the county court with jurisdiction to make a sale of the lands belonging to said minors; and it was the duty of the county judge, when the sale was reported by the guardian, to inquire into the manner in which the sale was made, and of the facts and circumstances surrounding the same, and to convince himself that the same had been made fairly and in keeping with the orders of the court and the law pertaining to the same, and to safeguard the interests of the minors in connection with said sale, and when the county court entered a decree confirming the guardian's sale of said lands, purchasers and parties dealing with the same had the right to assume that the county court did faithfully perform its duty. It is unfortunate that these minors are imposed upon and defrauded in this manner, and it is all the more reprehensible since the fraud was perpetrated by their father; but, on the other hand, it is unjust and inequitable to cause bona fide purchasers and innocent third parties, such as the defendants in this case, to suffer on account of the wrongs committed by the guardian.

Commenting on this question, the court, in the case of Brooks v. Tucker, 83 Okla. 255, 201 Pac. 643, held:

"Where the lands of minors have been sold by their guardian in consummation of a fraudulent agreement between the guardian and the purchaser, and the probate procedure under which such sale was made is regular, the title of the property sold under such sale vests in a bona fide purchaser of the grantee at such sale without notice of the fraudulent agreement; the remedy of the ward is an action against the guardian and his bondsmen for the amount of their damage resulting from the fraudulent sale."

In the body of the opinion of Brooks v. Tucker, supra, the court uses the following language which is applicable to the instant case, to wit:  (

"The hearing on the return contemplates that the court will hear testimony offered in support of the return of sale, and that if after a full hearing the testimony shows that the sale has been fairly conducted and the property sold for its fair cash value and the guardian has in all his acts conducted the sale as provided by law, the court will enter an order confirming the sale. The law contemplates that the court

must be satisfied from credible testimony adduced on the hearing of the return of the sale and that the same has been conducted in accordance with the statutes and a fair value paid for the property, and the decree confirming the sale is a solemn judgment of the court vouching for the truthfulness of all the essential facts necessary to constitute a valid sale. Purchasers in dealing with this class of land have a right to assume that the court has faithfully performed its duty and there is no excuse for the existence of these fraudulent and sham sales, except the gross neglect of duty on the part of courts entering the decrees of confirmation in this class of sales. No court should ever confirm a sale made by a guardian until the judge thereof is convinced by credible testimony that the property has been sold for a fair value and the money paid to the guardian deposited with the court for the guardian. But where minors have been defrauded by fraudulent sales of their property, they are not without a remedy, but they have a cause of action against the guardian and his bondsmen on the general and special sales bond to the extent of their damages on account of the fraud committed by the guardian in making the sale, and the judges of county courts, who negligently make a practice of informally approving such sales, are incompetent to hold an office of trust and should be removed from office. It is inequitable to make bona fide purchasers of the property at such sales suffer on account of the wrongs committed by such guardians and courts."

The court, in the case of Bowling v. Merry, in a recent opinion, 91 Okla. 176, 217 Pac. 404, held:

"A purchaser at a guardian's sale, if the proceedings relating thereto are regular on their face, may not be ousted of his title by reason of fraud of the guardian inducing such sale, where the purchaser did not have knowledge or participate in such fraud."

We have carefully examined the record in this case and cannot say that the finding of the trial court, that the defendants did not have notice of the fraud practiced by the guardian in procuring the sale of her lands, is not supported by the evidence.

The judgment of the lower court is affirmed.

By the Court: It is so ordered.