## TIGER v. WILDMAN.

No. 16234—Opinion Filed Feb. 16, 1926.

**1. Indians—Devolution of Creek Allotment Governed by Creek Law.**

The devolution of a Creek Indian allotment is governed by the Creek law of descent and distribution, where such allotment was selected and certificate of allotment issued June 13, 1900, and the allottee died in March, 1902, and homestead and allotment patents covering the lands selected were issued in March, 1903.

**2. Same.**

Under the Creek law of descent and distribution, where one dies intestate, leaving no surviving wife, father or mother, and without children, having property and being survived by brothers and sisters, such property passed to the surviving brothers and sisters in equal shares.

**3. Guardian and Ward—Validity of Guardian's Appointment in Indian Territory —Consent of Parent as Obviating Record Notice.**

Where a guardian was appointed by order of the probate court, in what was Indian Territory, for infant minors, pursuant to Mansfield's Digest of the Laws of Arkansas, section 3477, the father being dead, and the mother, with whom the minors were living having filed a sworn petition with the application of the guardian asking for his appointment, and no other facts are disclosed upon the records, such order of appointment is not void because the record fails to disclose that notice was served upon the mother.

**4. Same—Guardian's Sale—Confirmation— Duty of Court—Presumptions.**

Upon confirmation, the probate court must examine the return and witnesses and ascertain whether the sale was fairly made, the manner by which the property was sold and the price received for the interest of the minor and, if there has, in fact, been an appraisement, it will be presumed, though the appraisement may be irregular, that there was sufficient showing made to the court to justify a finding of the court that the property sold for 90 per cent. of its appraised value, and that the sale had been legally and fairly made, unless it appears that the court, under no circumstances, could so find.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Creek County; James Hepburn, Judge.

Action by Ada Tiger against Sarah A. Wildman and others. Judgment for defendants, and plaintiff brings error. Affirmed in part, and reversed in part.

Hulette F. Aby, Wm. F. Tucker, Wm. H. Martin, and John T. Smith, for plaintiff in error.

Roy T. Wildman, for defendant in error.

Opinion by THOMPSON, C. This action was originally commenced in the district court of Creek county by Ada Tiger, plaintiff in error, plaintiff below, against Sarah A. Wildman, defendant in error, and others, defendants below, in ejectment, to recover an undivided one-fifth interest in the northeast quarter of section 7. township 18, in range 8, east of the Indian base and meridian, in Creek county, Okla., together with damages for unlawfully withholding possession thereof, and for costs. Parties will be referred to as plaintiff and defendant as they appeared in the lower court.

The cause was tried on an amended petition of plaintiff, which, in substance, set up deraignment of title to the land in controversy through John (Jumbo) Tiger, her father, who, she alleges, died intestate leaving her and Oda Tiger, a son, and Soconthlanay Tiger, his widow, full-blood citizens and residents of Creek county and that, at the time of the death of said John (Jumbo) Tiger, he was the owner of a one-fifth undivided interest in and to the lands in controversy; that he was one of the surviving heirs of Timmie Tiger, who died intestate sometime during the month of March in the year 1902, and that said lands were selected and a certificate of selection issued on the 13th day of June, 1900, to the said Timmie Tiger as his allotment of lands as a duly enrolled citizen of the Creek Nation, and that a patent was duly executed to Timmie Tiger on the 11th day of March, 1903; that upon

the death of the said Timmie Tiger the lands described descended to his heirs according to law of descent and distribution of the Creek Nation, and that her father, John (Jumbo) Tiger, was a brother and one of the five heirs under said Creek law, the other four being brothers and sisters of the said Timmie Tiger; that upon the death of John (Jumbo) Tiger, she inherited an undivided one-tenth interest in the lands in controversy, subject to the dower interest of the widow, Soconthlanay Tiger; that the said above-named widow died on or about the 23rd day of October, 1910, and that said dower interest was thereby extinguished upon her death; that upon the 24th day of January, 1912, Oda Tiger died intestate, leaving the plaintiff as his sole and only surviving heir at law to his one-tenth interest, and that she was at the time of bringing the action the owner of an undivided one-fifth interest in the lands in controversy, and that the defendants were claiming some right, title, or interest in the premises, and that said claim was without foundation, either in law or equity, and that their claims constituted a cloud upon the plaintiff's title; that defendants had held said property unlawfully for the period of 14 years, and asked for a judgment for $936 for damages for such unlawful detention, recoverable for the six years next preceding the bringing of the action, and prayed judgment for possession of the property; that she be declared the owner of the legal title therein, and that same be quieted and confirmed in her, and for judgment for damages for unlawful detention in the amount sued for, and for costs.

The defendant Sarah A. Wildman answered by way of general denial, and asserted title in herself by virtue of a certain guardian's deed executed September 21, 1909, claiming to have been the purchaser of the same at a guardian's sale.

Plaintiff filed reply alleging that the purported guardian's deed was void and of no effect, for the reason that the guardian had been appointed without proper notice to the mother of the minor, and that she did not waive said notice, and that the land had been sold at private sale for less than 90 per cent. of its appraised value.

The cause was tried to the court without the intervention of a jury, and the court rendered its judgment in favor of the defendant and against plaintiff, and dismissed her action. Motion for a new trial was timely filed, heard and overruled, exceptions reserved by the plaintiff, and the cause comes regularly upon an appeal to this court from said judgment.

The attorneys for plaintiff assign six grounds of error in their brief, but content themselves in presenting the same under the four following heads:

"(1) The devolution of an allotment is governed by the Creek law of descent and distribution, where such allotment was selected in June, 1900, and the allottee died in March, 1902, and homestead and allotment patents covering the lands selected were issued in March, 1903.

"(2) Under the Creek law of descent and distribution, where one dies intestate, leaving no surviving wife, father, or mother, and without children, having property, and being survived by brothers and sisters, such property passed to the surviving brothers and sisters in equal shares.

"(3) Where a guardian is appointed for certain minors, whose father is dead and whose mother is living, pursuant to the laws of the state of Arkansas relating to the appointment of guardians, and no notice was given to the mother of said minors and no waiver of such notices was made by the mother of said minors, such appointment is void.

"(4) A guardian's sale of a minor's interest in land at a private sale is invalid where the minor's land is sold for less than 90 per cent. of the appraised value, or where there has been no appraisement thereof within one year prior to the date of sale."

The guardianship proceedings were attached as exhibits and introduced as evidence, relative to the appointment of a guardian and the proceedings for the sale of the lands in controversy, and an agreed statement of facts was submitted, which is as follows:

"It is hereby stipulated and agreed by and between the plaintiff and defendants in the above entitled cause of action, that the facts relating to said cause of action are substantially as follows:

"(1) That the lands involved in this action constitute the allotment of Timmie Tiger, who was enrolled on the Dawes Commission rolls as a full-blood citizen of the Creek Nation opposite Roll No. 6104; that a certificate of selection dated June 13, 1900, was issued to said Timmie Tiger; that it appears from the records in the office of the Superintendent for the Five Civilized Tribes at Muskogee, Okla., that no certificate relating to said allotment other than said certificate of selection was issued prior to issuing allotment and homestead patents covering said land; that said records also disclose that no contest was made regarding said allotment; and that delivery of said certificate of selection was made by mailing the same to David Tiger on September 21, 1900; that thereafter allotment and homestead patents covering said lands were issued to said allottee, Timmie Tiger, on

March 11, 1903; and that said allotment and homestead patents were approved by the Secretary of the Department of the Interior on the 3rd day of April. 1903.

"(2) That the allottee, Timmie Tiger, died intestate sometime in the month of March, 1902, leaving no father, mother, brothers and sisters, who are enrolled on the Dawes Commission roll as full-blood citizens of the Creek Nation roll numbers as follows, to wit:

"Saline Tiger, a sister, No. 6105

"Lucy Tiger, a sister, No. 6108.

"Martha Tiger, a sister, No. 6109

"John (Jumbo) Tiger, a brother No. 6663

"Dave Tiger, a brother, No. 5150

"(3) That Dave Tiger, a brother of Timmie Tiger, died on or about the 17th day of July, 1905, leaving as his only heirs his children. Robert Tiger and Jessie Tiger.

"(4) That Jennie Tiger, a sister of Timmie Tiger, died sometime in the year of 1893, survived by her only child, Harry Long, who was living at the time of the death of Timmie Tiger.

"(5) That the Creek Nation as a political sovereignty had a codified form of laws relating to descent and distribution; and that section 6 of said laws was as follows:

" 'Be it further enacted, that if any person died without a will, having property and children, the property shall be equally divided by disinterested persons; and in all cases where there are no children, the nearest relative shall inherit the property.'

"(6) That John (Jumbo) Tiger died sometime in May, 1906, survived by his widow, Soconthlanay Tiger, his daughter, Ada Tiger, and his son, Oda Tiger, all of whom were enrolled on the Dawes Commission rolls as full-blood citizens of the Creek Nation.

"(7) That Soconthlanay Tiger died on or about the 23rd day of October. 1910. intestate and single, leaving as her only heirs her daughter, Ada Tiger, and her son, Oda Tiger.

"(8) That the said Oda Tiger died on or about the 24th lay of January, 1912. intestate, unmarried and without issue, leaving as her sole heir his sister, Ada Tiger, plaintiff in this action.

"(9) That on the 5th day of January, 1907, there was instituted in the United States Court for the Western District of the Indian Territory at Sapulpa proceedings in guardianship over the persons and estates of the said Ada Tiger and Oda Tiger, minors; that said proceeding was duly transferred to the county court of Creek county. Okla., after the advent of statehood; that a full. true and correct transcript of said guardianship proceedings. in so far as the same affect the lands involved in this controversy, including all petitions, motions, and other documents filed therein, all citations and notices issued therein, all returns, and reports made therein, and all orders and decrees made and entered therein, with such indorsements or notations as appear upon the original instruments with reference to the date of the filing of the same, are hereto attached, marked 'Exhibit A-1' to 'Exhibit A-26' inclusive, and made a part hereof.

"(10) That in pursuance of the guardianship proceedings aforesaid, said Larry Brown, acting under such authority as may have been conferred upon him by said court in the said guardianship proceedings, did, on the 21st day of September, 1909, make, execute, acknowledge and deliver unto Gordon C. Hughes and Hall C. Miller a certain guardian's deed; a true and complete copy of the same being hereto attached, marked 'Exhibit B' and made a part hereof; and that such title as may have been conveyed by virtue of said guardianship proceedings and said guardian's deed has been transferred to the defendant Sarah A. Wildman.

"(11) All of the facts herein set forth shall be treated in the trial of this cause as admitted by all parties.

"(12) Any exhibit hereto attached may be introduced in evidence in part or in full by any party hereto, without any proof, and in lieu of the original instruments of which such exhibits purport to be copies.

"(13) Evidence of any facts, which are not included in this instrument and are not inconsistent therewith, otherwise competent, relevant, and material under the issues, may be proved at the trial of this cause by any party."

The first proposition urged above is conceded to be correct by attorneys for defendant, and the question is thoroughly settled by the Act of Congress of March 1, 1901. Section 28, which, among other things, provides that an allotment made to an enrolled Indian under the act "shall descend to his heirs according to the laws of descent and distribution of the Creek Nation and be allotted and distributed to them accordingly," and has been interpreted by a long line of decisions of this court, that the descent is fixed and must be determined by the laws of the Creek Nation in force in the Creek Nation at the time the allotment in this case was made. See Woodward v. DeGraffenreid, 238 U. S. 284; Reynolds v. Fewell, 236 U. S. 58; Barnett v. Way, 29 Okla. 784, 119 Pac. 418; Childers v. Samuels, 107 Okla. 169, 232 Pac. 103. The Original Creek Agreement was effective from June 25, 1901, until August 8, 1902, and Timmie Tiger's allotment, which included the land in controversy here, was selected. and certificate issued in June, 1900, and descent was cast under the Creek law.

Under the second proposition the question comes up in this case as to whether the five surviving brothers and sisters of Timmie Tiger, the allottee, took the whole allotment to the exclusion of Harry Long, his nephew, son of a deceased sister, under the Creek law of descent and distribution. The Creek law of descent and distribution reads as follows:

"Be it further enacted, that if any person die without a will, having property and children, the property shall be equally divided by disinterested persons; and in all cases where there are no children, the nearest relative shall inherit the property."

It is urged by attorneys for the plaintiff that the whole of his allotment passed to his surviving brothers and sisters, and that each of them became the owner of an undivided one-fifth interest in his allotment. and that the plaintiff in the case upon the death of her brother, Oda Tiger, inherited the entire undivided one-fifth interest of their deceased father, John (Jumbo) Tiger, and not a one-sixth interest, and that Harry Long, the nephew of Timmie Tiger, son of a deceased sister, at the time of his death, inherited no part of said land. It is the contention of the attorneys for defendant that Harry Long, the nephew, inherited through his deceased mother an undivided one-sixth interest in the property by right of representation.

Attorneys for both parties cite the case of DeGraffenreid v. Iowa Land & Trust Co., 20 Okla. 687, 95 Pac. 624, in support of their contentions. It is conceded by both parties that the precise question presented here has never been passed upon by this court except by way of analogy, and that only in the DeGraffenreid Case, supra, which has been followed in other cases upon kindred questions. It is further conceded that the only question involved in the DeGraffenreid Case was whether the mother, as the nearest relative of Castella Brown, took the whole of the estate to the exclusion of her husband, and that the decision in that case touching the point in controversy here was mere dictum. In our view of the DeGraffenreid Case, supra, we are not inclined to extend the decision further than the opinion itself extended it, and, upon a review of the said DeGraffenreid Case, in construing section 6 of the statute of the Creek Nation, supra, which seems clear to us, we are of the opinion that said statute is not ambiguous, but it says what it means and means what it says, that the property mentioned in said act shall, in all cases where there are no children, be inherited by the nearest relative, and the only question to be determined is, Who is "the nearest relative?" We do not feel that we are authorized to extend it further and add to the words "the nearest relative," the words "or their descendants," under the facts in this case, while, in the opinion in the DeGraffenreid Case, this court said that said section 6 should be construed as if it read:

"Section 6. Be it further enacted, that if any person died without a will, having property and children, the property shall descend to the child or children and their descendants, if any, equally, and if no child or descendant, and the estate descended to the intestate on the part of the father, then to the father, and if no father living, then to the brothers and sisters of the blood of the father, etc. If the estate descended to the intestate on the part of the brother, then to the mother, and if no mother living, then to the brothers and sisters of the blood of the mother," etc.

It will be observed in the above quotation that this court did extend the Creek law to include the words "their descendants," after declaring that the property should descend "to the child or children," but it did not say that it should extend to the brothers and sisters and add to that, "or their descendants," and we are not inclined to extend the interpretation further than the court extended it in the DeGraffenreid Case.

We therefore are of the opinion that this court, having decided in a long list of opinions that allotments, within the provisions of the Creek law above quoted, descend to the nearest relative, the nearest relatives of Timmie Tiger were his living brothers and sisters, and that the law did not contemplate that the same should descend to the descendants of a deceased brother or sister when there were living brothers and sisters, and we are, therefore, of the opinion that the plaintiff in this case was the owner of an undivided one-fifth interest in the land in controversy instead of a one-sixth interest, as contended for by the defendant, and the probate sales being for an undivided one-sixth interest of the property did not convey all of the interest of the plaintiff in the property in controversy here, but that she still owns in her own right a 1-30th interest in said property, which was not conveyed by the probate sale.

The third proposition is that no notice was given to the mother of the minor of the application for the appointment of guardian, and that the mother never waived said notice, but, upon examination of the record, it is disclosed that Soconthlanay Tiger duly signed a sworn application, witnessed by two witnesses, to the United States

Court within and for the Western District of the Indian Territory at Sapulpa, which was filed with the petition for the appointment of guardian, to have Larry Brown appointed guardian of Ada Tiger, the plaintiff herein, and Oda Tiger, minor heirs of John (Jumbo) Tiger, in which application it was recited that she was the widow of John Tiger, deceased, and that the mother of the said minors was dead, and that the petitioner was a step-mother of the minors, and that said minors resided with her at Sapulpa in the Western District of the Indian Territory, and, in the agreed statement of facts, it is recited in the sixth paragraph that John Tiger was the husband of Socothlanay Tiger and the father of Ada Tiger and Oda Tiger, and, in the seventh paragraph, that Soconthlanay Tiger was the mother of Ada Tiger and Oda Tiger. Therefore, it necessarily follows that she must have been the mother of the plaintiff, although it is recited in the petition for appointment that she was the step-mother.

Under such circumstances, the trial court was justified, and, in our opinion, we are justified, in holding that Soconthlanay Tiger, the person who signed the sworn application for the appointment of the guardian in this case, was the mother of the minors and had them in her custody and control, and that by signing and filing said application for the appointment of Larry Brown as guardian in the guardianship case, it was unnecessary to give the statutory notice required under the laws of Arkansas in force and effect at the time of the appointment, and we therefore conclude that the appointment of Larry Brown as guardian in this case was proper, under the record presented here, and that no reversible error can be predicated upon this assignment.

The fourth and last assignment involved the question as to whether the minors received 90 per cent. of the appraised value of the land at the sale conducted in this case.

The appraisement shows that there were five parcels of land appraised separately at a total sum of $4,540. The confirmatory order shows each minor's interest as being one-half of the first tract of land, and being one-twelfth of each of the other tracts of land, totalling the sum of $753.35. It appears from the order of confirmation of the sale in this case, that when the report came up for consideration by the county court of said sale, it appeared that the bid for the interest of each of the two minors was $600, which was less than 90 per cent. of the appraised value of each minor's

interest, and the court refused to accept the bid of $600, as appears from the confirmatory order in this case, and upon his refusal to accept the bids the bid was increased in the sum of $105, making the total bid of the sum of $705 for the interest of each minor, thereby bringing the bid up to over 90 per cent. of the appraised value of each minor's interest, thereby showing that the question of each minor's interest, and what was intended by the appraisement submitted by the appraisers in this case, was considered and determined by the county court at the time of the confirmation of the sale.

The defendants offered to show by the appraisers themselves that the values placed upon the land in their report of the appraisement of the land was the total value of the land, and not an appraisement of the separate interest of the minors, which was refused by the court upon the grounds that the appraisement itself was sufficient to show what the intention of the appraisers was, and in the decision of the trial court he adopted the finding of the county court that the report of the appraisers showed the total value of each minor to be one-half of the first tract appraised and one-twelfth of the other four tracts.

This court in numerous cases has held that, if possible, the construction will be given to the proceeding to uphold the deed.

In the case of Littlehead v. Mount, 99 Okla. 225, 227 Pac. 98, in the 5th paragraph of the syllabus it is said:

"Upon confirmation, the probate court must examine the return and witnesses, and ascertain whether the sale was fairly made, and ascertain the manner by which the property was sold, and the price received for the interest of the minor, and if there has in fact been an appraisement, it will be presumed, though the appraisement may be irregular, that there was sufficient showing made to the court to justify a finding of the court that the property sold for 90 per cent. of its appraised value, and that the sale had been legally and fairly made, unless it appears that the court under no circumstances could so find."

In the above case it will be observed that the court, under the record, had to indulge the presumption that the appraisement was proper and a sufficient showing made to the county court to justify its finding, but in the present case it affirmatively appears that the court refused to confirm the sale because 90 per cent. had not been bid, and that thereupon the purchaser increased his bid $105, so as to enable the minors to obtain over 90 per cent. of the appraised value of each of their undivided interests, thereby

showing that the court had the matter before it for consideration and did consider it at the time he confirmed the sale, which presents a stronger case than the case of Littlehead v. Mount, above referred to. To the same effect are the cases of Tiger v. Drumright, 95 Okla. 174, 217 Pac. 453; Ross v. Groom. 90 Okla. 270, 217 Pac. 480; Atkinson v. King, 93 Okla. 37, 219 Pac. 914; Burris v. Straughn, 107 Okla. 299, 232 Pac. 394.

We agree with the attorneys for plaintiff that, where it clearly appears that the land of the minors was sold for less than 90 per cent. of the appraised value thereof, the sale is invalid, and that the authorities cited by the attorneys for plaintiff upon this proposition are correct, but in this case we are not prepared to say and we will not say, under the facts and the record in this case, that the interest of the minors in the lands conveyed in this action was less than 90 per cent. of the appraised value thereof.

Upon an examination of the whole record, and the briefs and authorities cited in support of the contention of the parties, we are forced to conclude that the judgment of the trial court was correct upon all propositions presented by attorneys for plaintiff for reversal of this cause, except the second, and the court was in error in finding that Harry Long had an undivided one-sixth interest in the property in controversy by representation as the son of a deceased sister of Timmie Tiger, but that under the Creek law of descent and distribution, the five surviving brothers and sisters of Timmie Tiger took the whole estate, exclusive of Harry Long, and that each of said surviving brothers and sisters took an undivided one-fifth interest. and that the plaintiff, Ada Tiger, upon the death of her brother, was the owner of an undivided one-fifth interest of the lands in controversy, and that the guardian's sale only disposed of a one-sixth interest belonging to her in said lands, and that she still owns an undivided 1-30th interest.

We are therefore of the opinion that the judgment of the lower court should be reversed upon this proposition alone and affirmed on all other propositions. It follows that the judgment of the trial court should be reversed, with instructions to the trial court to enter judgment in favor of the plaintiff, Ada Tiger, for an undivided 1-30th interest in the lands in controversy, and such damages for the use of said interest as the trial court may find to be justly due plaintiff.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. p. 524 § 96. (2) 31 C. J. p. 523 § 96. (3) 31 C. J. p. 1084 § 63; 1088 § 76 (Anno). (4) 31 C. J. p. 1192 § 335.