Day, J.
 

 The paramount question involved in this case is: What degree of diligence is required of an executor in notifying a legatee under a will of a bequest in time to claim the same before it shall become the private property of the executor?
 

 It is admittedly the law that the relation between an executor and the legatees and devisees in a will is that of trustee and
 
 cestui que trust,
 
 and that a fiduciary relation and obligation exist as to notice and good faith and fidelity in discharging the terms of the trust.
 

 It is the claim of the defendant in error that he has complied with the statutory obligations in regard to notifying the legatee and also complied with the terms of the will imposed in the premises.
 

 It is quite true that there is no positive language in terms in the will directing the defendant, as executor, to make search for his sister, the legatee; nor does the statute command in positive terms any affirmative acts other than the usual form .of notice to notify legatees in the state. Due diligence, honesty, and integrity are at all times required of a trustee in his relations to his trust and the
 
 cestm que trust.
 
 This obligation cannot always be defined in words. It is a relative term.
 
 *628
 
 and what would be due diligence under one set of circumstances might not be under another.
 

 “All executors, trustees and other fiduciaries are held to a certain degree of care and prudence in the exercise of their duties, and moreover, must act honestly and in good faith.” Schouler on Wills (Students’ 5th Ed.), Section 611.
 

 “The degree of care, diligence and prudence required of an executor or administrator is that which an ordinary man would exercise in the transaction of his own business.” 3 Alexander on Wills, p. 2272.
 

 “The care, prudence, and judgment which the man of fair average capacity and ability exercises in the transaction of his own business, furnishes the standard to govern an administrator in the discharge of his trust duties.”
 
 Dundas
 
 v.
 
 Chrisman,
 
 25 Neb., 495, 41 N. W., 449;
 
 In re Bush Estate,
 
 89 Neb., 334, 131 N. W., 602.
 

 Has this defendant in error measured up to that standard?
 

 While the terms of the will did not direct him upon the death of the testator to search for his sister and give her personal notice of the death of the mother, so that the sister would have opportunity to claim her legacy, yet doubtless the mother in making the will thought and had a right to believe that her son, Frank 8. Mull, would act honestly, fairly, and in good faith.
 

 In the case of
 
 Smith
 
 v. Thompson, L. R., 1 Ch. Div. (1896), 71, there was a will in which the testator gave his residuary estate to trustees upon trust to invest “in such stocks, funds, and securities as they should think fit.” One of the
 
 *629
 
 trustees received a bribe for making a certain investment, and, afterwards, upon being compelled to account for tbe investment, which proved an unfortunate one, he was required to pay back, and it was there held that the words ‘[shall think fit” must be read as meaning “shall, honestly think fit.”
 

 So in the present instance, by naming her son as executor of the will the testatrix undoubtedly meant that her executor would use the knowledge that he had of the whereabouts of his sister, growing out of the settlement of the father’s estate, and endeavor in good faith to locate and notify the plaintiff in error of the terms of her mother’s will.
 

 It is not conceivable that this mother intended that her daughter to whom she gave this legacy should be deprived thereof because she had no opportunity to know of the fact of her mother’s death and the running of the two-year period named in the will, and it is not to be supposed that the mother intended that the son, her executor, should receive this legacy as a reward of not having exercised all due diligence to follow up the information and means of information that he had relative to the whereabouts of his sister.
 

 It is not to be lost sight of that this executor by remaining silent, and simply complying with the letter of the will and the statute, prevented his sister from learning of the death of her mother and claiming the legacy under the terms of the will.
 

 Has he shown due diligence in the premises in the light of the authorities and the record and
 
 *630
 
 undisputed facts in this case? It cannot he denied that the conduct of Frank ,S. Mull, executor, manifested a purpose on his part to do nothing and say nothing which might in any way aid the plaintiff in error in discovering her rights under the will of her mother.
 

 It is true he claims to have written letters which were returned to him; yet unfortunately they are not produced in evidence. And it is equally true that within two years he had settled his father’s estate and had personal correspondence with her as well as correspondence through her attorney, concerning settlement of that estate. His own attorney, Frank ,Sehnee, under date of April 3, 1917, sent a cheek, attached to a receipt therefor, for her $500' legacy in the estate of the father of plaintiff and defendant in error. And under date of June 18, 1918, the same attorney, acting for defendant in error, sent a formal notice of the claims of Frank S. Mull, executor of the estate of Michael Mull, against such estate.
 

 This state of facts, as evidenced by this correspondence, the affidavits, etc., is not consistent with the representations made to the probate court in the final account filed in January, 1920:
 

 “I do not know the address of Myra Mull and have not heard from her for more than four years past. Frank S. Mull.”
 

 Such representations to the probate court cannot be reconciled in good conscience with the duty which a trustee owes his trust. In view of the personal profit which accrued to this defendant in error by reason of his failure to use a
 
 *631
 
 greater degree of diligence in the discharge of his' trust, we are of opinion that his conduct amounted to a fraud upon his sister, the plaintiff in error, and that it is not conscionable to permit such conduct to take refuge behind the fact that the letter of the will or the statute does not in terms direct greater activity upon his part.
 

 In support of this view we call attention to the case of Shackelford v.
 
 Hall,
 
 119 Ill., 212, where, although the estate was held to have vested, yet the reasoning and deductions of the court are relevant. In that case a father had left a will containing the following language:
 

 “It is my desire and will that none of my children under the age of twenty-one years, shall marry until they shall each one of them attain the age of twenty-one years. To this end I stipulate and will that in ease any one of them now under the age of twenty-one years shall intermarry, then and in that event, he, she or they shall only be entitled to receive the sum of one dollar out of my estate, as his, her or their portion thereof.”
 

 There was a bequest to his wife for life and at her death all the estate, both real and personal, to be divided in four equal shares, between Henry Hall, Eliza Hall, John P. Hall and Robert Hall. Henry Hall was appointed executor. An action in partition was begun, and Eliza Hall, having married in ignorance of the terms of the will before she was 21 years of age, it was asked that she be excluded from any part of the estate and that her interest therein be declared forfeited, except the
 
 *632
 
 one dollar. On page 218 of the opinion is this language:
 

 “And this rule is in harmony with the general principles of law, which always lean hard against a forfeiture of estates once vested, and that it will not allow such forfeiture, where there has been no laches or misconduct. In the case before us, we must assume that the defendant did not know of the existence of the will, and much less of the condition which it contained, that she should not marry till she was twenty-one years of age, under the penalty of forfeiting her interest in her father’s estate. In ignorance of the will, she supposed she was entitled to take as heir without any condition. When we look at this case as it is presented by the record we see it would be a monstrous piece of injustice to enforce this forfeiture against her. Here was her elder brother, who was an executor named in the will, who, knowing of the condition of forfeiture, had an interest in keeping it from her that she might by doing the prohibited act incur the forfeiture and her portion thus go to himself and the other heirs of the testator. Under the influence of this direct interest, he (suffers her to go on in ignorance of the will, and marry only four months before she attained the age of twenty-one years, and now he comes forward and claims the benefit of the forfeiture, and insists upon depriving her of the portion devised to her by the will. To sustain this claim would be to offer a premium for the commission of the most heartless frauds. No better case than this can be imagined, to illustrate the wisdom of the rule of law upon which we rest the present
 
 *633
 
 decision. As before remarked, we must assume that she was kept in ignorance of the condition, when it was the duty of the executor to inform her promptly, that she might have conformed to her father’s express wishes, or, if she chose to violate with her eyes open, she then could have no cause to complain of hardship or injustice. In this particular case, were we even permitted to indulge in probabilities, it is more likely that the executor kept her in ignorance of the condition, that he might share- in the spoils, than that she would voluntarily relinquish so large an estate as this is, rather than postpone her marriage for a few months. If the executor did, in fact, do his duty, and give her notice of the condition, it was the easiest thing, in the world for him to show that fact. But there is not, even in the petition, the least pretense that she had any knowledge of the condition, nor is there a particle of evidence in the report of the master, or in any other part of the record, that she had the slightest intimation of such a fact. We have not the least doubt that, upon the soundest principles of law and morality, she must take the estate devised, discharged of the condition.”
 

 We have examined the case of
 
 Lewis
 
 v.
 
 Lewis,
 
 L. R., 2 Ch. Div. (1904), 650, which case was greatly relied upon by the Court of Appeals in reaching its conclusion. The learned chancellors in that court held that where a legacy is given upon a condition, an executor who takes a beneficial interest in the legacy on the breach of the condition owes no duty to the legatee to give
 
 *634
 
 notice of the terms of the legacy. In that case the will provided:
 

 “I give and bequeath my leasehold house
 
 * * *
 
 unto my son Evan Lewis now abroad and direct that in case he should not return and claim the said house the same shall accrue unto my son Edward Lewis aforesaid.”
 

 The testatrix died May 15, 1897, and on August 16 following, the defendant, Edward Lewis, through his agent wrote to Evan Lewis, resident in Patagonia:
 

 “By now the will has been approved and a house has been left you * * * which is under my care that is your brother and according to the will the house and the money are to be in my hands until you claim them.”
 

 On February 25, 1899, Evan Lewis died without returning to make his claim under the will of his mother.
 

 Under these facts the above-noted holding was made in that case, and we are not disposed to question the conclusion of the learned chancellors, but we regard the facts as far different from those of this case, in view of the fact that the legatee had an opportunity to return and claim his legacy, an opportunity that was denied the plaintiff in error in this case. Even conceding all that is claimed for
 
 Lewis
 
 v.
 
 Lewis, supra,
 
 we decline to recognize it as an authority under the facts and circumstances as disclosed by this record.
 

 It is quite true that a large number of cases may be cited in support of the theory that no greater diligence is required of an executor than that imposed by statute or by the terms of the will.
 
 *635
 
 None of the cases, however, that we have been able to find, has the element of the private beneficial interest to the executor if he merely observes the letter of the will and statute and overlooks the spirit that good conscience and common honesty require should be observed.
 

 Entertaining the view that the executor should use all reasonable diligence with the knowledge and means of knowledge at his command to locate and notify the legatee of the bequest so that she may claim the same according to the terms of the will, and that a failure to use such diligence, thus securing the bequest for himself, is tantamount to a fraud upon the legatee, and that whether or not such diligence has been used is a question that should be determined in the trial court, our conclusion is that the judgment of the Court of Appeals should be reversed, and the cause remanded to the court of common pleas for further proceedings according to law.
 

 Judgment reversed.
 

 Marshall, C. J., Jones and Allen, JJ., concur,,
 

 Wanamaker, J., not participating.