Marshall, C. J.
 

 In this case we are not troubled by disputed issues of fact. The demurrer to the petition admits its well-pleaded allegations. The alleged will of Estella Seeds must therefore be, for the purposes of the discussion, admitted to be a forgery and a nullity, unless validity and potency have been given to it by its fraudulent probate and the other probate proceedings of equally fraudulent nature whereby the legal title to the
 
 *149
 
 property was lodged in James W. Seeds, the party who conceived and executed the fraud. The difficulties of the case are greatly reduced by the fact that the property has not passed into the hands of innocent purchasers. Taking the allegations of the petition as true, Nancy Jane Seeds, the present wife of James W. Seeds, acquired no better title than that of her grantor, she having paid no consideration therefor. The question of the sufficiency of this petition must therefore be determined upon the sole legal question whether James W. Seeds, the forger of the will, can take advantage of his own wrongdoing and actively defraud the children and heirs at law of Bstella Seeds, they being also his own lawful children. •
 

 Counsel for the defendants claim that the controlling feature of the case lies in the fact that James W. Seeds employed the instrumentality of a forged instrument, which was in form a will and which was on its face in due form and in full compliance with the statutory requirements as to execution, which was afterward probated in apparent faithful compliance with the statutory provisions relating to probate, and all other proceedings relative to the transfer of the property being in apparent good form; and in the further fact that the statutory period had elapsed wherein an action might have been brought, under Section 10531, General Code, to contest the will. That statute provides:
 

 “If, within one year after probate had, no person interested appears and contests the validity of the will, the probate shall be forever binding, saving, however, to infants, and persons of un
 
 *150
 
 sound mind, or in captivity, the like period after the respective disabilities are removed.”
 

 Section 12087, General Code, makes similar provision.
 

 The younger of the two children arrived at her majority April 27, 1918, and the time within which she could have brought an action at law to set aside the will, under Section 10531 or 12087, expired April 27, 1919.
 

 This suit was not brought to set aside the will, but, on the contrary, the petition treats the will as having been established and seeks to have the wrongdoer in possession of the property declared to be a trustee
 
 ex maleficio
 
 for the benefit of the heirs at law.
 

 Former decisions of this court have declared that a will becomes forever binding unless set aside as a result of proceedings instituted within the time and in the manner required by statute. It is not necessary in this case to inquire into the soundness or unsoundness of those decisions. While it is true that the plaintiffs in this case cannot recover the property of their mother without impeaching the will itself, and without taking away from the beneficiary named in the will itself, it is not necessary, under the well-settled rules governing courts of chancery, to challenge and overturn all the proceedings whereby the forged will was given color of validity, and whereby the naked legal title was vested in the wrongdoer. The only issues which could have been raised in a suit to contest the will were the manner and form of its execution, the mental capacity of the testatrix, her freedom from restraint and influence, and
 
 *151
 
 whether or not she was of legal age. Assuming, without deciding, that the way to an action at law to contest the will is no longer open, it is insisted by plaintiffs that a court of chancery has power to declare the trust. After the alleged will was probated, the subsequent proceedings resulting in the distribution of the estate and transfer of legal title to James "W. Seeds were not questioned either upon appeal or error, and the statutory time for such error or appeal has likewise expired. Assuming, without deciding, that those proceedings have become a finality, it is again insisted that a court of chancery has power to declare a trust, notwithstanding such finality.
 

 Section 11224, General Code, provides that an action for relief on the ground of fraud must be brought within four years after the cause thereof accrued, but it further provides that the cause shall not accrue until the fraud is discovered. This being a special section relating to fraud, it is open to question whether this section is a limitation upon Sections 10531 and 12087. But in the view we take of this case, it is not necessary to consider or decide such question. This controversy can be disposed of upon broad principles of chancery jurisprudence, without disturbing the will or its probate or the subsequent proceedings for transfer of legal title.
 

 The Constitution of Ohio, in Section 16 of the Bill of Bights, provides:
 

 “All courts shall be open and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.”
 

 
 *152
 
 It is therefore open to serious question whether the legislature would have any power to give validity and finality to an instrument admitted to he a forgery,' except to provide a reasonable limitation upon the time of bringing such action. Evidently the legislature has sensed this difficulty, because in providing a limitation for actions on the ground of fraud it has given the defrauded parties the period of four years to bring such action after discovery of the fraud.
 

 In courts of equity, where laches is an issue, the matter is generally determined by applying the analogy of the statute of limitations, and where a statute of limitations has been enacted it becomes a bar if the statutory period has run. The early decisions of this court are in line with general authority on this subject.
 

 In
 
 Ormsby, Jr.,
 
 v.
 
 Longworth,
 
 11 Ohio St., 653, the action was not brought until 35 years after a mistake was made, but within 21 years after discovery of the mistake. This being an action in which adverse possession was an issue, the court held that the analogy of the statute of limitations would apply and that the time would not begin to run until after discovery, of the mistake, even though no fraud was shown. The same court, in the case of
 
 Longworth
 
 v.
 
 Hunt,
 
 11 Ohio St., 194, declared the same doctrine of analogy and applied it in a case where it was sought to have a deed set aside on the ground of fraud in its procurement, and it was held that the time begins to run only from the time of the discovery of the fraud. In the course of the opinion, at page 201, it was stated by Brinkerhoff, C. J.:
 

 
 *153
 
 “In cases of which courts of equity, and courts of law, have concurrent jurisdiction, the' former act in
 
 obedience
 
 to statutes of limitation; but in cases of which equity has exclusive jurisdiction, they act only in
 
 analogy
 
 to them. This case is of the latter kind; for, the bar of the statute'being-complete at law, a court of equity, alone, can give relief.”
 

 The only element lacking to constitute complete analogy between those cases and the cáse at bailies in the fact that those cases did not involve the impeachment of a judgment. Numerous other cases have, however, been- decided by this court where it was sought to impeach a judgment. The earliest important case is that of
 
 Lockwood
 
 v.
 
 Mitchell,
 
 19 Ohio, 448, 53 Am. Dec., 438, in which it was held that where a party in a foreclosure suit had obtained a decree for a larger sum than was actually owing, and had by fraud and circumvention prevented the mortgagor from making a defense, the party injured might proceed by original bill to set the decree aside; and that this might be done without tender of the amount due. The case of
 
 Long
 
 v.
 
 Mulford,
 
 17 Ohio St., 484, 93 Am. Dec., 638, involved many issues similar to those in the case at bar. It declared that the fiduciary relation applies to all cases where influence is acquired and abused, and confidence reposed and betrayed, even though the case may not be of a strictly fiduciary character. It further declares that where a party having an infant under his influence and control, against whom he is prosecuting a suit, against which no defense is made for the infant, intends to insist on the rights of an ordinary adversary,
 
 *154
 
 he should first surrender the advantages arising from his fiduciary or
 
 quasi
 
 fiduciary ' character. That case further declares that:
 

 “A decree against an infant may be impeached for error by original bill; and what would have been a good cause of action to sustain an original bill is a good cause of action under the Code.” That case also declares:
 

 “Lapse of time to bar the rights of the infants does not, in such case, commence until their discovery of the wrong; and the burden of showing such knowledge as to make them chargeable with laches rests on the defendants.”
 

 In the course of the opinion by White, J., we find the following, at page 508 (93 Am. Dec., 638):
 

 “It is true, over 18 years elapsed from the taking of the decree to the commencement of this suit; but the plaintiffs were very young at the time of taking the decree; and no laches can be imputed to them until discovery, the delay in which is accounted for, in the present case, by the situation of the plaintiffs and their relation to the defendants.”
 

 Again, at page 509 (93 Am. Dec., 638):
 

 “There is another ground upon which the right of the plaintiffs to relief, may, perhaps, be safely placed; and that is, by raising in the defendants an equitable or constructive trust in respect to the property in controversy.
 

 “Trusts of this description depend upon the conclusions of law independently of contract, and often arise in cases where there was no intention to create a trust on the part of any of the parties concerned; generally speaking, they are imposed
 
 in invitum.
 
 1 Spence’s Eq., s. p., 509. A court of
 
 *155
 
 equity will not permit any person standing in a fiduciary situation, or who, from the relation in which he stands to another, is capable of exercising an undue influence over his mind, to derive profit from any transaction which takes place during the continuance of such fiduciary character in the one ease, or which may be supposed to have taken place by reason of such opportunities of undue influence in the other.
 
 Id.,
 
 s. p., 626.”
 

 Another important case declaring the same principle is
 
 Coates
 
 v.
 
 Chillicothe Branch of State Bank,
 
 23 Ohio St., 415. That case in unmistakable language declares that the power given to courts of record by the Code to vacate or modify their judgments after term does not confer original jurisdiction, but that the power thus conferred does not limit the right to impeach a judgment or decree by original action in a proper case. The court then stated in the opinion, at page 432:
 

 “Where the case is such that relief is properly sought, other than that which may be obtained in the case in which the judgment or decree is rendered, and the impeachment of the judgment or decree is only necessary to the further relief sought, an original action is the proper remedy.”
 

 In
 
 Michael
 
 v.
 
 American Nat. Bank,
 
 84 Ohio St., 370, 95 N. E., 905, 38 L. R. A. (N. S.), 220, the court refused to vacate and open up a judgment, because it was not found that the successful party had been guilty of any fraud or circumvention. The court did say, however, at page 380 of the opinion (95 N. E., 907):
 

 “Where a judgment is attacked for fraud the statutory remedy is not exclusive but cumulative.
 
 *156
 
 This principle is well settled in Ohio.
 
 Long
 
 v.
 
 Mulford,
 
 17 Ohio St., 485 (93 Am. Dec., 638);
 
 Coates
 
 v.
 
 Bank,
 
 23 Ohio St., 415;
 
 Darst
 
 v.
 
 Phillips,
 
 41 Ohio St., 514.”
 

 In
 
 Darst
 
 v.
 
 Phillips,
 
 41 Ohio St., 514, a judgment was successfully impeached in an original action, on the ground that there had been no service of process or notice, but, on the contrary, that a judgment had been entered upon a cognovit. In the petition it was alleged that the note had been paid before judgment was taken, and that Darst had therefore fraudulently obtained the judgment. The opinion cited the following cases with approval:
 
 Long
 
 v.
 
 Mulford, supra; Coates
 
 v.
 
 Bank, supra.
 

 In the case of
 
 McEntire
 
 v.
 
 McEntire,
 
 107 Ohio St., 510, 140 N. E., 328, it was declared, at page 527 (140 N. E., 333) of the opinion, that a judgment for alimony can be impeached and therefore modified where fraud is shown in obtaining the judgment.
 

 All these cases very clearly and conclusively establish the power of a court of equity, in an independent action, to impeach the solemn judgment of a court of law, where the judgment has been obtained by fraud and circumvention.
 

 It is true in the instant case that Nancy Jane Seeds was not a party to the action in the probate court, but she acquired her title from the party who is alleged to be the perpetrator of the fraud, and it appears from the allegations of the petition that she paid nothing for the title, and her rights therefore cannot rise higher than those of her grantor.
 

 Counsel for the defendants have stressed the claim that plaintiffs had a legal remedy which they
 
 *157
 
 failed to exercise within the time limited. A petition filed in the original proceeding to open up the judgment would not afford complete and adequate relief in the instant case, because of the fact that there has been a transfer of the legal title to the real estate and it would be necessary that Nancy Jane Seeds be made a party defendant, which could not have been done in a petition filed in the original suit.
 

 If this petition were, as claimed by defendants, an action to contest a will, it is quite clear that it could not be maintained, because wills and contests of wills are purely statutory, and the legislature, which gave the right to make a will and has also given the right to contest it, has fixed a definite limitation within which such a suit must be brought. This suit, not having been brought within the time limited, could not be maintained as a will contest. It does not follow that, because the effect of this suit, if successful, would result in a different course of devolution of the property, it must be regarded as a will contest. It has already been seen that judgments of courts induced by fraud and circumvention may be set aside, and there, can be no reason why proceedings in the probate court relating to wills should have a greater degree of sanetity or finality than other proceedings in other courts. It has further been shown herein that judgments may be set aside either under Section 11631, General Code, on the ground of fraud, by further proceedings in the same suit, or that a cumulative remedy is provided in equity for proceeding in an independent suit to set the same aside. To these two remedies it is well settled that a third is. added;
 
 *158
 
 viz., to declare a trust
 
 ex maleficio
 
 when the person who holds the legal title has acquired the same by circumstances of fraud and circumvention whereby the court has been defrauded and imposed upon, and in such a case equity becomes the artificial conscience of the malefactor. "Where a court has been induced by fraud and imposition to enter a decree which would not have been entered upon a full disclosure of fact, a court will fasten it upon the conscience of the owner of the legal title so as to convert him into a trustee for the benefit of the parties who have been defrauded and would have received the title under an honest disclosure of the facts. This was the pronouncement of this court in the case of
 
 Long
 
 v.
 
 Mulford,
 
 17 Ohio St., 484, at page 509. This principle is one of great antiquity. It was established by the high court of chancery in England in numerous cases, and has been applied to fraudulent wills. The leading case on this subject is
 
 Barnesly
 
 v.
 
 Powel,
 
 1 Vesey, Sr., 284, 27 Eng. Rep. Reprint, 1034, decided in 1749. The will had been probated, and one of the inducements to probate was a forged proxy of the next of kin, giving consent to the probate. Upon submission of this issue, the will was set aside. This decision has been cited with approval by the Supreme Court of the United States in the case of
 
 Broderick’s Will,
 
 88 U. S., (21 Wall.), 503, 22 L. Ed., 599. In that case the court refused to set aside the will because of the peculiar facts alleged and proved, but declared,
 
 semble,
 
 that:
 

 “Where the courts of probate have not jurisdiction, or where the period for its further exercise has expired and no laches are attributable to the
 
 *159
 
 injured party, courts of equity will, without disturbing the operation of the will, interpose to give relief to parties injured by a fraudulent or forged will against those who are in possession of the decedent’s estate or its proceeds,
 
 mala fide,
 
 or without consideration.”
 

 In that case the court refused to give relief, because it appeared that the delay in bringing the suit was not due to ignorance of the fraud, or any attempt to conceal it, but to ignorance of the decedent’s death and all of the open and public facts of the case. The bill of the complainants showed that the fraud was a matter of public notoriety for more than eight years before the bill was filed.
 

 On the other hand, the case of
 
 Gains
 
 v.
 
 Chew,
 
 43 U. S. (2 How.), 619, 11 L. Ed., 402, is definitely in point. The legal issue in that case was whether the matter should be determined in a court of law, or whether jurisdiction could be entertained in chancery. A will had been made in 1811, and a new will made in 1813 providing a different devolution of property, and the beneficiaries under the first will suppressed the second, presented the earlier will to the court of probate, had it proved, and proceeded to administer the property, several pieces of property being sold. Many years thereafter the beneficiary under the second will learned of its existence and of the fraud practiced upon the court, and brought a suit in equity claiming to be the devisee, praying for an accounting from the beneficiaries under the probated will. The court declared that it was not necessary to probate the will of 1813, and that the court could give relief without decreeing the revocation of the first will.
 
 *160
 
 It was further declared that, inasmuch as the controversy was complicated by numerous parties and the various circumstances under which purchases of parcels of property were made, adequate relief could not be obtained in a court of law. It was further declared:
 

 “If the fraud shall be established against the executors, and a notice of the fraud by the other defendants, they must be considered, though the sales have the forms of law, as holding the property in trust for the complainants. Under these circumstances a suit at law could not give adequate relief. A surrender of papers and a relinquishment of title may become necessary. The powers of a court of chancery, in this view, are required to do complete justice between the parties.”
 

 At page 650 (11 L. Ed., 402) of the opinion we find the following:
 

 “One man possesses himself wrongfully and fraudulently of the property of another; in equity, he holds such property in trust, for the rightful owner.”
 

 In
 
 Patterson
 
 v.
 
 Dickinson,
 
 193 F., 328, the Circuit Court of Appeals of the Ninth Circuit, in 1912, cited the English cases with approval and declared the principle of trusts
 
 ex maleficio.
 
 That case is a pertinent authority by reason of the facts upon which it is based. The will had been probated in Missouri, and an action begun to contest the same. Thereafter, and while the contest was pending, the will was proved in California where certain property of the testator was located, the court in California knowing nothing of the pending contest in Missouri. The proponent of the will in California
 
 *161
 
 was necessarily a party to the contest, and therefore had full knowledge of the contest, and had concealed the fact of the pending contest from the California court. The bill prayed that the proponent of the will be adjudged to be an involuntary trustee for the benefit of the next of kin, and for an accounting. The lower court sustained a demurrer to the petition, but the Court of Appeals reversed and remanded, with instructions to overrule the demurrer and for further proceedings.
 

 It will thus be seen that the Supreme Court of the United States has followed the High Court of Chancery of England in maintaining an action in equity to declare a trust
 
 eco maleficio,
 
 after probate, and after expiration of the period when a contest could be filed, to have the fraudulent beneficiaries declared to be trustees for the benefit of the next of kin.
 

 The High Court of Chancery of England should be accepted as persuasive authority in this class of cases, because the source of our equity jurisprudence is found in the extraordinary jurisdiction of the High Court of Chancery of England, and it has been expressly held by the Supreme Court of the United States, in a number of cases, and by the courts of last resort in at least seven of the states that equity jurisprudence in the United States generally embraces the same matters of jurisdiction and modes of remedy as existed in that court. In many other states of the union where this has not expressly been held, the principle has become impliedly established by reason of the decisions of the High Court of Chancery of
 
 *162
 
 England being frequently cited with approval and followed.
 

 The petition in
 
 the
 
 instant case contains allegations which, state a cause of action, and, if proved, entitle the plaintiffs to the relief sought. If it be said that the sanctity, the solemnity, and the finality of judgments and decrees of the courts will thereby be destroyed, it may be answered that fraud and imposition upon the courts have always been grounds for setting aside their judgments and decrees; that where decrees are entered by practice of fraud and imposition upon the courts, whereby certain persons have enriched themselves at the expense of others, it is the peculiar province of a court of chancery to right the wrong. The only protection to which the decrees and judgments of the. courts are entitled is to be found in the quantum and character of proof which are necessary to be found in establishing a case of fraud and imposition.
 

 The judgments of the court of common pleas and of the Court of Appeals must be reversed, and the cause remanded to the court of common pleas for further proceedings.
 

 Judgment reversed.
 

 Day, Allen and Kinkade, JJ., concur.