Vivian PHILLIPS, Betty Austin, nee Smith, Wayne Smith and Cities Service Oil Company, Plaintiffs in Error,

v.

Merry X. BALL, Defendant in Error.

No. 37554.

Supreme Court of Oklahoma.

June 7, 1960.

Rehearing Denied Dec. 27, 1960.

Application for Petition to File Second Petition for Rehearing Denied Jan. 17, 1961.

Walter Hubbell, Walters, Luther B. Eubanks, Lawton, Ivy, Ivy & Ivy, Waurika, of counsel, for plaintiffs in error, Vivian Phillips, Betty Austin, nee Smith, and Wayne Smith.

Gentry Lee, F. H. Bacon, L. L. Corn, Bartlesville, for plaintiff in error, Cities Service Oil Co.

Walter L. Kimmel, Tulsa, O. C. Essman, Robert D. Hudson, Tulsa, of counsel, for defendant in error.

BERRY, Justice.

The defendant in error, Merry X. Ball, hereafter referred to as "plaintiff", instituted this action on December 7, 1953, against the plaintiffs in error, hereafter referred to as "defendants" or by name, to recover an undivided ⅗ths interest in the estate of Dewey W. Smith, her deceased father who died intestate in 1942 a resident of Cotton County, Oklahoma, and for an accounting in connection with said interest and other equitable relief.

From order overruling defendants' motion for new trial filed following judgment in plaintiff's favor, defendants perfected this appeal.

Plaintiff, who was born in 1924 is the daughter of Dewey W. Smith hereafter referred to as "Smith", and Clara Glass Smith, now Eaglin, hereafter referred to as "Clara". This marriage was terminated in 1925 by divorce obtained on petition of Smith filed in the District Court of Oklahoma County, Oklahoma. After the termination of the marriage and shortly before Christmas in 1925, Clara left plaintiff at a boarding home for children in Oklahoma City and never returned for her. Clara failed to reveal her identity or the identity of the child and the Home was therefore unable to return plaintiff to her family or friends. Plaintiff was delivered by the person operating the Home to an organization in Oklahoma City known as the "Oklahoma Children's Home Society". She was subsequently adopted by Gordon and Mollie King. In the decree of adoption it was stated that plaintiff's name should be changed from "Unknown" to "Merry X. King". In 1942 plaintiff married C. C. Ball, Jr. Plaintiff did not learn who her father was until about 60 days before this action was filed.

In 1933 Smith married the defendant, Vivian Phillips, who is hereafter referred to as "Vivian". Of this marriage the defendants, Betty Austin, nee Smith, and Wayne Smith, hereafter referred to as "Betty" and "Wayne" were born. In 1927 Clara remarried.

In August, 1942, Vivian instituted proceedings in the County Court of Cotton County to probate Smith's estate. In said proceeding she sought to be and was appointed administratix of the estate. Vivian successfully represented that she and Betty and Wayne were the sole and only heirs-at-law of Smith. Plaintiff was neither mentioned directly nor indirectly in said proceedings. Vivian did, however, advise the attorney, (Mr. P.), handling said proceedings that there was a rumor to the effect that Smith had a child by a former marriage, which information was given the County Judge. In fact, an unsuccessful effort was made to locate Clara, and the probate proceeding was left open for several months because of the "missing-child rumor". However, and irrespective of the rumor, a "Final Decree" was pro-

mulgated in the probate proceedings on May 10, 1943, which decree was unappealed from. The decree reads in part as follows:

"It further appearing to the court that the following persons are the sole and surviving heirs at law of said decedent and are entitled to share in said estate in the following proportions, to-wit:

"Vivian Smith, widow, one-third, Betty Smith, daughter, one-third, Wayne Smith, son, one-third.

"It is therefore ordered, adjudged and decreed by the court that Vivian Smith, widow, Betty Smith, daughter, and Wayne Smith, son, are the sole and only heirs of Dewey W. Smith, deceased, and that an equal undivided one-third interest in and to the real estate and personal property above described be and the same is hereby transferred, vested, and assigned and conveyed to said widow and children forever."

On July 27, 1943, Vivian instituted proceedings in the County Court of Cotton County for the purpose of being appointed guardian of the estate of her children, Betty and Wayne. She was subsequently appointed guardian of the estate of said children and as guardian effected the sale of an oil and gas lease to Cities Service Oil Company, hereafter referred to as "Cities Service", covering the undivided two-thirds interest of the children in certain minerals that formed a part of the Smith estate. The minerals underlying the real estate described in the oil and gas lease subsequently proved to be productive of oil and gas and at the time this action was filed more than one million dollars worth of oil had been produced and sold from the real estate. Vivian also leased her interest in said minerals to Cities Service.

The proceedings to probate Smith's estate and the guardianship proceedings by virtue of which an oil and gas lease covering Betty's and Wayne's mineral interests was granted to Cities Service are regular on their face, and long ago became "final" in

the generally-accepted sense of the quoted word as understood by the Bench and Bar.

The plaintiff contends that Vivian's failure to disclose the existence of plaintiff in the probate and guardianship proceedings constituted extrinsic fraud on her part and served to vitiate said proceedings in so far as the interest of plaintiff in her father's estate is concerned; that Cities Service had knowledge that Smith was survived by a child who was not named in the probate proceedings at the time it acquired the oil and gas lease and, therefore, cannot be considered as a purchaser for value without knowledge of plaintiff's claim; that the caveat emptor doctrine applied to the guardianship sale and if Cities Service had made inquiry it would have learned of plaintiff's claim. The defendants contend that the probate proceedings in the Smith case are regular on their face and the final decree being unappealed from is final and under the doctrine of res judicata serves as a bar to plaintiff's action; that plaintiff's action is barred by limitations; that Cities Service was a bona fide purchaser for value without notice at the guardianship sale of the oil and gas lease and as such should be protected.

Following an extended trial, the trial court found that plaintiff was a daughter of Smith and Clara and as such an heir to and entitled to take a stated portion of his estate; that she was entitled to an accounting from the other defendants because of her said ownership; that while Vivian was not guilty of intentional fraud, her acts constituted "resulting fraud" which served to vitiate in part the probate proceedings in controversy; that Cities Service was not an innocent purchaser of plaintiff's undivided interest in the minerals underlying the real estate referred to in the oil and gas lease from Vivian as guardian of the estate of Betty and Wayne and that plaintiff's interest is free of said lease.

On the fraud issue the trial court made these specific findings of fact:

"* * * The Court further finds that Vivian Smith Phillips, the widow

of Dewey W. Smith, and her attorney, William Powell, of Walters, Oklahoma, advised the County Court in the probate proceedings in the Estate of Dewey W. Smith, deceased, that there was a rumor that Dewey W. Smith had been married before his marriage to the defendant, Vivian Smith Phillips, and that there was a rumor that there was a child born of that marriage, but after search, they were unable to find such child. The Court further finds that this was a very strong rumor, and was well known by relatives of Dewey W. Smith and other persons, in and near Walters, Oklahoma, and that the defendant, Vivian Smith Phillips, was familiar with this rumor. The Court finds that while efforts were made on behalf of Vivian Smith Phillips to locate the child, that her acts in administering the Estate of Dewey W. Smith, without providing for this plaintiff, constituted resulting fraud, although her acts were not reprehensible and were not intentionally fraudulent."

and

"It Is Further Ordered, Adjudged and Decreed that the acts of the defendant Vivian Smith Phillips in administering the Estate of Dewey W. Smith *constituted* and were not acts of intentional fraud but were acts of resulting fraud against this plaintiff * * *."

■ In Steil v. Leverett, 133 Okl. 300, 272 P. 412, we held that where the proceedings of a county court are legal on their face, same are only subject to collateral attack where it is shown that extrinsic fraud was practiced in obtaining the judgment that is complained of.

■ We have held further in substance that acts which result in the court being imposed on and by which interested parties are prevented from having their interests protected, constitute extrinsic fraud that vitiates a judgment. See for example Cochran v. Barkus, 112 Okl. 180, 240 P. 321. But extrinsic fraud is actual fraud, therefore, intentional fraud. This will be found at p. 2,569, Vol. 3, Freeman on Judgments:

"* * * Extrinsic fraud has been defined to be 'actual fraud, such that there is on the part of a person chargeable with it malus animus, the mala sens, putting itself in motion and acting in order to take an undue advantage of some other person for the purpose of actually and knowingly defrauding him' * * *"

■ The trial court found in effect that Vivian was guilty of constructive fraud and not extrinsic or actual fraud. The phrase "constructive fraud" is defined at page 211, Sec. 2, 37 C.J.S. Fraud as follows:

"Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, to or injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud."

■ In view of the fact that the trial court found that Vivian was not guilty of extrinsic or actual fraud, which finding is sustained by the evidence, the proceedings to probate Smith's estate and the guardianship proceedings must, as to Cities Service in the absence of knowledge on its part of plaintiff's claim, be considered as valid and conclusive. The fact that said proceedings were conclusive and final as to Cities Service is not, however, decisive of plaintiff's action against Vivian, Betty and Wayne who were unjustly enriched by the constructive fraud practiced on plaintiff in the probate proceedings.

■ A constructive trust may arise from constructive fraud. In fact, where a party obtains legal title to property by fraud, violation of confidence, or in any other unconscientious manner, equity will impress a constructive trust on property so obtained for one who in good conscience is entitled to it. See 89 C.J.S. Trusts § 139, p. 1018,

and Lewis v. Schafer, 163 Okl. 94, 20 P.2d 1048. This was said in the second paragraph of the syllabus to Teuscher et al. v. Gragg, 136 Okl. 129, 276 P. 753, 66 A.L.R. 143:

"The holder of the legal title to lands will in equity be charged as trustee, where it was acquired by fraud or under such circumstances as to render it inequitable for him to retain."

■ We are of the opinion that under the facts of this case, Vivian, Betty and Wayne hold that portion of the Smith estate that they took which in fact belongs to plaintiff, in trust for her. And we are of the further opinion that under said facts and because they were unjustly enriched at the expense of plaintiff, plaintiff should be allowed an equitable lien on all property in their hands that rightfully belongs to plaintiff as an heir at law of Smith. This will be found at page 837, Sec. 4, 53 C.J.S. Liens:

"* * * The basis of equitable liens is variously placed on the doctrines of estoppel or unjust enrichment, or on the principle that a person having obtained an estate of another ought not in conscience to keep it as between them; and frequently it is based on the equitable maxim that equity will deem as done that which ought to be done, or that he who seeks the aid of equity must himself do equity. * * *"

See also Mullens et al. v. Geo. C. Wright Lumber Co. et al., 182 Okl. 355, 77 P.2d 700.

The plaintiff, under the facts and as a matter of equity, is also entitled to an accounting from Vivian, Betty and Wayne, unless her cause of action against them is barred by limitations. 34 C.J.S. Executors and Administrators § 505, p. 412.

■ Plaintiff contends that the attorney, hereafter, referred to as "Mr. H.", who handled the guardianship proceedings in controversy, was told that Smith fathered a child by his marriage to Clara, and that such knowledge on the part of Mr. H. was knowledge on Cities Service's part of plaintiff's claim as one of Smith's heirs at law. This contention is based on the assertion that while Mr. H. was Vivian's attorney he was also attorney for Cities Service, which relationship is said to have arisen out of the fact that Cities Service made a request of a lease broker (in the vernacular gave him a "ticket") to buy the oil and gas lease in controversy, and that in order to acquire good title it was necessary to have a guardian appointed for Betty and Wayne who were minors and have the lease covering their interests sold at guardianship sale. In brief, that Cities Service is chargeable with knowledge possessed by an attorney for an agent of Cities Service. In view of the fact that the final decree in the Smith estate had been final some three years before the guardianship proceedings were instituted, which decree determined that Vivian, Betty and Wayne, were Smith's sole heirs at law; that Mr. H. did not examine the abstract of title for Cities Service which was done by an attorney in its regular employ; and the further fact that the findings of heirship in said probate proceedings are consistent with the proposition that Smith could have fathered a child by his marriage to Clara and said child could have died long before the probate proceedings were instituted, we are of the opinion that Mr. H.'s knowledge of an alleged missing heir is not, under the facts of this case, imputable to Cities Service. The findings of the trial court on the foregoing issue are clearly against the weight of the evidence.

Plaintiff also contends that since the doctrine of caveat emptor applied to the guardianship sale, Cities Service was under a duty to make inquiry aside from those things that would appear in an abstract of title and that if inquiry had been made, Cities Service would have learned of the "missing child rumor" which if investigated would have led to plaintiff and her claim. In other words, plaintiff contends that Cities Service should have done that which it apparently took others years to do and which probably would never have been done but for the discovery of oil on a property forming a part of Smith's estate.

The burden cast on a purchaser at a guardianship sale is not as onerous as plaintiff asserts it to be. In Moroney et al. v. Tannehill et al., 90 Okl. 224, 230, 215 P. 938, 943, it is stated that "The doctrine (of caveat emptor) has been so relaxed that the purchaser at a judicial sale is entitled to expect and obtain a sound marketable title to the property sold." We stated in the 6th paragraph of the syllabus to Jackson v. Carroll et al., 86 Okl. 230, 207 P. 735, 736, that "If the record of a judicial sale shows a legal title upon its face, together with all other records which the law requires a purchaser to take notice, and the purchaser has no actual notice of any fact that impeaches and destroys the validity of the record title * * * and in addition thereto the purchaser has paid a consideration for his title, then the purchaser has a right to stand upon his title, notwithstanding the title may in fact and in truth be fraudulent, void, or a nullity as between the parties and all persons with notice, actual or constructive. * * *" See also 39 C.J.S. Guardian and Ward § 139, p. 231.

■ In view of the fact that the judicial proceedings upon which the sale was based were regular on their face, which statement also applies to other things appearing in the record title, and in view of the further fact that plaintiff's claim at the time of the guardianship sale consisted of a rumor, we decline to hold that under the caveat emptor doctrine Cities Service was under a duty to make inquiry and learn of the rumor or investigate the rumor to the extent of discovering plaintiff and making known to her her relationship to Smith.

There remains for consideration Vivian's, Betty's and Wayne's contention that plaintiff's action against them is barred by limitations.

■ The fact that this action was not filed for a number of years following entry of the final decree in the probate of Smith's estate does not under the facts show that plaintiff's action is barred by limitations. As heretofore pointed out, the facts develop that constructive fraud was exercised in obtaining said decree and for said reason plaintiff had two years from the date she discovered or should have discovered the fraud by the exercise of due diligence within which to institute this action. American Nat. Bank of Enid v. Crews et al., 191 Okl. 53, 126 P.2d 733. The evidence shows that plaintiff did not learn of her relationship to Smith or of facts bearing upon the claims that she asserts in this action until a very short time before this action was filed and that irrespective of diligence on her part she could not have learned of her relationship to Smith by the exercise of diligence. Plaintiff, and for that matter, the adopting parents, had no clue which if pursued would have developed the facts upon which plaintiff's action is based. Plaintiff's link with her past had been completely broken at such a tender age that her mind did not grasp nor retain pertinent facts that would serve to establish her parentage and result in knowledge of the claims made in this action.

We are of the opinion that under the facts Cities Service acquired a valid oil and gas lease to the minerals that said lease purports to cover subject, however, to the rights of plaintiff as an heir of Smith beginning in so far as Cities Service is concerned on the date she filed this action. If Cities Service remitted oil or gas runs to Vivian or Betty or Wayne after this action was filed in which plaintiff had an interest as one of Smith's heirs, Cities Service must account to plaintiff for her interest in said runs and it must, of course, in the future in disbursing proceeds from oil or gas produced treat plaintiff as owning that portion of the Smith estate that plaintiff is found to own. Cities Service is not liable to plaintiff, however, for lease bonus, delay rentals, or proceeds of oil or gas runs paid to Vivian or Betty or Wayne prior to the filing of this action.

We are of the further opinion that Vivian, Betty and Wayne are each liable for and must account to plaintiff for any portion of Smith's estate that they took which in fact belonged to plaintiff, including any accruals from such property such as lease

bonuses, delay rentals, oil or gas runs or rents; that said parties hold in trust for plaintiff any properties of the Smith estate or accruals therefrom that plaintiff as an heir at law of Smith was entitled to take; that plaintiff has an equitable lien upon said properties to the extent of their indebtedness to plaintiff and that said parties should be directed and ordered to convey or deliver over to plaintiff her interest in any property that they presently own, possess or control. In our opinion the end result of a judgment to the foregoing effect will only place plaintiff in the same relative position that she would have been in had her identity been known and disclosed in the proceedings to probate the Smith estate.

Affirmed in part and reversed in part and remanded with directions for further proceedings consistent with the views herein expressed.

Jackson, J., having certified his disqualification in this case, Honorable W. W. Godlove, Lawton, Oklahoma, was appointed Special Justice in his stead.

WILLIAMS, V. C. J., and HALLEY, JOHNSON and BLACKBIRD, JJ., concur.

DAVISON, C. J., WELCH and IRWIN, JJ., and GODLOVE, Special Justice, dissent.

BLACKBIRD, Justice (specially concurring).

I concur in the essential conclusions reached in the opinion filed here by Justice BERRY, but, as I view this case, there are strong reasons for reaching the same result that are not mentioned therein, and which I consider important, not only to the litigants in this case, but also of importance to the Bench and Bar in clearly defining our position, and charting its course in future litigation.

On the basis of its facts, this, to my knowledge, is a case of first impression and I think it should be more completely shown that our decision does not strike down any previous precedent cited by any of the parties, but is in accord with the majority of well-reasoned authority.

Though defendants contend that the final decree in the matter of Dewey Smith's Estate (Probate No. 1007), never having been appealed from, must, in the present district court action, be regarded as "res judicata", as to his heirship, and they cite Title 58 O.S.1951 § 632, as to the conclusiveness of such decree, they recognize, in one statement of their brief, that such a decree, even though rendered after proper statutory notice, can be modified "in a court of equity, by proof of fraud." It is well settled that where extrinsic fraud is shown to have existed, the successful party or parties unjustly enriched thereby may be regarded as trustees for the benefit of those who have thus been deprived of their rightful inheritances. See Patterson v. Dickinson, 9 Cir., 193 F. 328, 334, and Long v. Mulford, 17 Ohio St. 484, 93 Am.Dec. 638, 651, 652. While the judgment or decree of the probate court is not set aside—*where the estate property is still in the hands of the distributees,* said decree, though ostensibly valid, may be avoided, and the devisees' respective interests adjusted so that all legal heirs may obtain their proper share of the property. See Zaremba v. Woods, 17 Cal. App.2d 309, 61 P.2d 976, 981, citing Caldwell v. Taylor, 218 Cal. 471, 23 P.2d 758, 88 A.L.R. 1194; Gerlach v. Schultz, 72 Idaho 507, 244 P.2d 1095, and authorities cited *therein;* Purinton v. Dyson, 8 Cal.2d 322, 65 P.2d 777, 780, 113 A.L.R. 1239, and other cases cited in the Annotations thereto, and at 49 A.L.R. 1219, and in Hoverstad v. First Nat. Bank & Trust Co., 76 S.D. 119, 74 N.W.2d 48, 56 A.L.R.2d 938, 944; 30A Am.Jur., "Judgments", Sec. 761; Restatement of the Law, Judgments, Sec. 112. (The last cited case is distinguishable from the present one in that there *the executor held no part of the estate's corpus, as does Vivian Phillips here,* and the court deemed the action a collateral attack, and thought the better policy was to relegate the plaintiff therein to vacation proceedings in the county court, where requiring executors' accountings is a customary function).

When such procedure is followed, the dire and far-reaching effects on title stability, of "upsetting" final decrees, never occurs, and bona fide purchasers from distributees under apparently valid decrees, are protected. Sohler v. Sohler, 135 Cal. 323, 67 P. 282; Restatement, supra; 24 Am.Jur., "Fraud and Deceit", page 6, at note 4. Also as one court (Seeds v. Seeds, 116 Ohio St. 144, 156 N.E. 193, 198, 52 A.L.R. 761, 769) has put it:

> "If it be said that the sanctity, the solemnity, and the finality of judgments and decrees of the courts will thereby be destroyed, it may be answered that fraud and imposition upon the courts have always been grounds for setting aside their judgments and decrees; that where decrees are entered by practice of fraud and imposition upon the courts, whereby certain persons have enriched themselves at the expense of others, it is the peculiar province of a court of chancery to right the wrong. The only protection to which the decrees and judgments of the courts are entitled is to be found in the quantum and character of proof which are necessary to be found in establishing a case of fraud and imposition."

As to related matters, see the Annotations, 160 A.L.R. 1349, 1352, 1354.

By way of demonstrating the distinction between extrinsic and intrinsic fraud, as applied to probate proceedings, the court, in the Purinton case, supra (quoting from the Zaremba case, supra) pointed out [8 Cal.2d 322, 65 P.2d 780]:

> "There is a clear line of demarcation * * * between a statement made in the petition for the probate of the will *which would limit the giving of notices to heirs,* and testimony in court to the effect that there were no such heirs, *after the heirs had been notified* of the proceedings for the probate of the will as provided by the different sections of the Probate Code." (Emphasis mine.)

As will be noted from the above quotation, one of the types of misrepresentation, described therein, is in the same general category as that involved here, i. e., the type that tends to limit notice and prevent a party having an interest in probate proceedings, from having his "day in court" therein, such as the statements as to the number and identity of Dewey Smith's heirs that were contained in the petition for her appointment as administratrix and her final report and petition for distribution which Vivian filed in Probate Cause No. 1007, supra. If she had not made such representations, but instead had disclosed in said pleadings that her deceased husband may have had another heir besides those she named therein (of which possibility she was well aware) then there would have been no necessity for her undertaking (in order to show she had discharged her positive fiduciary duty as administratrix in said proceedings) the inconsistent and rather unenviable task of proving (without documentary verification or support) that she verbally gave the probate judge information whose tendency was to cast doubt upon the positive statements contained in her pleadings. But, in her verbal representations, she was not completely honest. Her characterization as mere "rumor", of information about a former marriage by Dewey and a child's being born of that marriage (birth of plaintiff) were more than just *rumor.* She *knew* they were *facts.* Of course, it was not proved that at the time her husband's estate was probated, Vivian knew that plaintiff was still alive, or in existence (though there is evidentiary basis for concluding that a more intelligent, diligent, or less "half hearted" search would have led to plaintiff's discovery). But Hewitt v. Hewitt, 9 Cir., 17 F.2d 716, 718, shows that this fact is not controlling. The significant thing is that Vivian and/or her attorney told the probate judge about plaintiff in a manner or way that tended to discourage, rather than encourage, further inquiry about, and search for, her. In the Hewitt case, supra, after showing that the

standard of conduct governing strangers at arms length, does not apply to the fiduciary relationship existing between the administratrix of estate property, and the rightful heirs to it, the court demonstrated that it is such fiduciary's duty to make a *full* disclosure to the court about her information as to the decedent's heirs; and that when she does not do this, or remains silent—resulting in her gain, or enrichment, at the missing heir's expense—"there is a fraud of most serious nature", whether it be regarded as "intrinsic" or "extrinsic", or both. With reference to this duty of an administratrix toward a "missing" heir, who in that case was the administratrix' deceased husband's adopted son, and her failure there to discharge it, the court, among other things, said:

"This duty she wholly failed to discharge, and the reason for her failure cannot be accepted. *She knew that her husband had an adopted son,* and the only knowledge or information she had as to his death was the bare statement of her husband that it had been so reported to him, but where, when, or by whom she was not advised. Had she communicated all of these facts to the court, it is not at all likely that a decree of distribution would have been entered without directing further investigation or inquiry—at least we have a right to so presume." (Emphasis mine.)

In the present case, Vivian had no information that plaintiff, whom she *knew* (rather than only heard) had existed at one time, was then dead. I see no reason why the court's condemnation of the administratrix' conduct in the Hewitt case, and the effect given said conduct, would not apply with equal, if not greater, force to Vivian's conduct here.

Monk v. Morgan, 49 Cal.App. 154, 192 P. 1042, is the only case defendants cite holding specifically that an administrator's misrepresentation to the probate court of the number and identity of his intestate's heirs is intrinsic fraud, and furnishes omitted heirs no ground, in equity, for relief from a decree of distribution based upon such misrepresentation. However, the California District Court of Appeals seems to have made an effort to explain that decision in the later case of Hewett v. Linstead, 49 Cal. App.2d 607, 122 P.2d 352, 354 where the court, after describing certain decisions referred to in the Monk case, said:

"These cases established the rule to be that where a distributee *is ignorant* of the existence of an heir, * * * and all statutory notices have been given, there has been no 'mistake' that will warrant relief under section 2224 of the Civil Code." (Emphasis mine.)

Later, in the same opinion, the court said:

"Although there is some confusion in the cases, we agree with plaintiffs that the better rule is that where a legatee knows of the existence of other heirs, and, for the purpose of defrauding such heirs and benefiting himself, fails to notify the court of the existence of such heirs, and *knowingly* files false petitions with the court representing *there are no* such heirs, he is guilty of extrinsic fraud warranting the imposition of a trust on the fraudulent distributee's interest." (Emphasis mine.)

Like the trial judge, I do not think it was necessary for Vivian to have had (in the probate proceedings) any specific intent or purpose to defraud, or deprive, plaintiff of her inheritance. Whether she had such intent, or not, the result was the same. 30A Am.Jur., sec. 761, supra, Note 16, sec. 791, Note 19, sec. 784, sec. 18, Note 3. There was no adversary trial of any estate claim by plaintiff, and she was the object of extrinsic, if not intentional, fraud. Under the undisputed circumstances of the present case, plaintiff was without actual notice of her father's death, or of the administration of his estate, and was as effectively and as completely prevented from appearing therein and having her claim to a child's share of said estate adjudicated (30A Am.Jur., supra, sec. 26, Note 2), as if the administration proceedings had been

conducted under the name of a fictitious intestate. For such a case, see Weyant v. Utah Savings & Trust Co., 54 Utah 181, 182 P. 189, 9 A.L.R. 1119, 1130. The ineffectiveness of the probate court's final decree as a bar to plaintiff's obtaining her rightful interest is due more to the fact that she (in whose existence Vivian had strong reason to believe) was not a party to the probate proceedings, than to bad faith on Vivian's part in not apprising said court of her existence. As said in In re Riley, 120 Minn. 210, 139 N.W. 361, 365, L.R.A.1916D, 7, the use of the term "fraud" in such connection "is perhaps unfortunate * * *". The "resulting fraud" of which the trial court found Vivian guilty (whether or not that be an accurate, or acceptable, term) is in the general category of "constructive fraud" (see Title 15, O.S.1951 § 59; In re Arbuckle's Estate, 98 Cal.App.2d 562, 220 P.2d 950, 23 A.L.R.2d 372, 378; 23 Am. Jur., "Fraud and Deceit", sec. 4) in which fraudulent intent is unnecessary. DeMoss v. Rule, 194 Okl. 440, 152 P.2d 594.

Nor are any of the Oklahoma cases cited by the defendants in conflict with our decision in this case. In O'Neill v. Cunningham, 119 Okl. 157, 244 P. 444, 447: "There * * * (was) no suggestion in the record that * * * (plaintiffs) did not know of the death of the deceased, or that an administrator had been appointed." Calkin v. Wolcott, 182 Okl. 278, 77 P.2d 96, involved a district court attack upon certain orders previously entered by the county court in guardianship proceedings. There, we determined that plaintiff's allegations of fraud in no way showed that there had been no "day in court", or fair hearing, as to the matters that the alleged fraud concerned. In that case, the ward's rights were before the county judge when he examined into, and approved, the accounts of the former guardian; while here, plaintiff was neither known to, nor present in, the probate court, nor was she represented by any agent or conservator of her rights. In fact, as already indicated, there was not only no one to apprise the probate judge of her rights, but it may be inferred from the evidence that there was no one to disclose to him, *as a fact* (as distinguished from rumor or hearsay), that such a person ever existed. Nor can what this court said concerning the absence of fraud on the part of Mrs. McJunkin's aunts and uncles in not apprising the court of her existence in Gassin v. McJunkin, 173 Okl. 210, 48 P. 2d 320, be of any controlling importance here, in the absence of any claim or showing that those aunts and uncles were more than *mere heirs*, and that there was extrinsic fraud *by a fiduciary* as Mrs. Phillips, the *administratrix* was (in law) to the plaintiff in this case. Hewitt v. Hewitt, supra. The fact that no statute requires the giving of actual, or personal, notice to the missing heir is no defense to *an administratrix or personal representative*. Morris v. Mull, 110 Ohio St. 623, 144 N.E. 436, 39 A.L.R. 323, 327. In Eaves v. Busby, Okl., 268 P.2d 904, we applied the rule quoted therein from Smith v. Kimsey, 192 Okl. 618, 138 P.2d 94, which imputes to a party, allegedly defrauded, notice of the fraud, from the date he has the means of discovering it; but, in the present case, the trial court held in substance and effect, that plaintiff had no such means for at least one reason, i. e., she was unable to discover "her true name or identity * * *". (In this fact also, lies a material distinction between this case and Hollingshead v. Hollingshead, 79 Okl. 292, 193 P. 412, in which plaintiffs resorted to equity, without attempting to show why they had not pursued their remedy at law). It is thus obvious that the rule, whose application was decisive in the Eaves case, does not apply here, and that no period of limitation began to run against plaintiff until she could, by the exercise of reasonable diligence, have ascertained her true identity and discovered the constructively fraudulent final decree in the Cotton County probate case (No. 1007, supra). In this connection, notice Gerlach v. Schultz, supra. The trial court found that plaintiff did not discover the fraud involved "until about sixty days before she filed this suit", and, in effect, held plaintiff not guilty of indiligence for

not having instituted it more than two years before it was commenced. See Tit. 12 O.S. 1951 § 95, Third paragraph. Neither such findings, nor said court's rulings that the action was not barred by limitations, or laches, can be said to be clearly against the weight of the evidence, or contrary to law. They must therefore be upheld.

With reference to the claimed application of the doctrine of caveat emptor to Cities Service's purchase, at guardianship sale, of its oil and gas lease on what was ostensibly an undivided two-thirds interest in the Section 17 land, I also agree with the opinion filed herein by Justice BERRY. Defendants' undisputed evidence shows that Cities Service was a bona fide purchaser of said lease for value without actual notice of any defect in Betty's and Wayne's title to the entire interest, which said sale purported to cover. Nor do I think that Tom Huff, their guardian's attorney, was such an agent of said Company as to charge, or impute, it with knowledge of what Art Smith testified he had told Huff about Dewey Smith's "missing heir" (the plaintiff). In this connection, see Pyeatt v. Estus, 72 Okl. 160, 179 P. 42, 4 A.L.R. 1570, 1578; and cases cited in the Annotations at 4 A.L.R. 1592, and 38 A.L.R. 820; Am. Jur., Vol. 5, "Attorneys at Law", secs. 74, 75, Vol. 2, "Agency", secs. 371, 372, Vol. 55, "Vendor and Purchaser", sec. 695. This case is different from In re Riley, 120 Minn. 210, 139 N.W. 361, 365, L.R.A.1916D, 7, where there was an opinion of a "Title Examiner" on record clearly pointing out to May Pearson's attorney the duration of the easement involved.

This court has never given unlimited application of the doctrine of caveat emptor to *all* kinds of so-called "judicial" sales. In addition to Moroney v. Tannehill, cited in the majority opinion, see Atkinson v. King, 93 Okl. 37, 219 P. 914; Hammert v. McKnight, 132 Okl. 14, 269 P. 289, 68 A.L.R. 549. See also Riley v. Martinelli, 97 Cal. 575, 32 P. 579, 581, 21 L.R.A. 33, and 30A Am.Jur., "Judicial Sales", secs. 180–182, both inclusive. Berry v. Tolleson, 68 Okl. 158, 172 P. 630, 632, points out the value, in obtaining fair prices for minor's interests, of according a bona fide purchaser at a guardian's sale, the same protection other bona fide purchasers enjoy. As far as concerns a judgment creditor and purchaser, who is a party to the proceedings in which the sale is ordered, and (according to some authorities) his assignee, at least one court has said that the doctrine is applied to that party because, instead of true value, he gives only credit on an antecedent debt, and, for that reason is not a true bona fide purchaser (Riley v. Martinelli, supra); but this court has said it is because "a knowledge of the irregularities in the procurement of the judgment is imputed to him because of the position he occupied in the action." Harjo v. Johnston, 187 Okl. 561, 104 P.2d 985, 996. Assuming, without deciding, that both bona fide purchaser, and his assignee, must take cognizance, at his peril, of what the sale proceedings do, or do not, provide (Sheldon v. Deal, 196 Okl. 531, 166 P.2d 771, 773; Charles v. Roxana Petroleum Corp., 8 Cir., 282 F. 983) and of any defects therein (Harjo v. Johnston, supra), does proper application of the doctrine of caveat emptor extend to withholding from either of them the protection ostensibly offered by a decree, or judgment, in *previous* litigation (to which they were not parties) that is apparently valid, final, and adjudicative of the quantum of the interests involved in the sale? Here, the final decree in probate cause No. 1007, supra, which Cities Service's Chief Title Attorney, Roy Johnston, testified (that in his examination of an abstract to the property in his office at Bartlesville) he considered "sufficient" evidence of the quantum of the interests of Vivian Phillips and her children, Betty and Wayne (in the Section 17 land) was valid on its face, and, being unappealed from, was ostensibly, and as far as a title examiner usually knows, final and conclusive. Said decree had all of the force, effect and legal presumptions that accompany district court judgments. Calkin v. Wolcott, and Sheldon v. Deal, both supra; Scott v. Gypsy Oil Co., 112 Okl. 13, 239 P. 887. As hereinbefore noted, said decree was, or

contained, a solemn and specific court adjudication that Vivian, Wayne and Betty were Dewey Smith's *sole and only* heirs. There is no issue (and presumptively no doubt) as to Cities Service having paid the lease's full current market value at the time of its acquisition. Being a stranger to probate cause No. 1007, supra, it was entitled to accept said cause's final decree at its "face" value. See Murphy v. Walkup, Okl., 258 P.2d 922; Harjo v. Johnston, supra; Pettis v. Johnston, 78 Okl. 277, 190 P. 681. In the last cited case, this court referred to the fact that bona fide purchasers are equity courts' "most especial favorites", (Pacific Reporter at page 692) and said that where they have purchased property under a judgment "not void on its face" they " * * * will be protected against either a motion to vacate or a bill in equity to annul or evade such judgment", *although extrinsic evidence would show want of jurisdiction* in the court rendering the judgment. The reason given for this by some courts, as explained in that case, is that " * * * public policy will not permit the introduction of extrinsic evidence to overcome that which it treats as absolute verity." And while this court there said it did not "subscribe to the doctrine that public policy closes the door absolutely" against such evidence, it held that "public policy shuts the door against" it to the extent of striking down "the rights of innocent third parties." I have carefully examined the record in this case, and as I view it, it contains insufficient evidence to overcome the presumption (supported by defendants' uncontradicted direct proof) that Cities Service Oil Company was a bona fide purchaser of the oil and gas leasehold on the Section 17 land. In this case, as in Murphy v. Walkup, supra, *the burden shifted to plaintiff to prove that said Company had notice of facts, which if reasonably developed by inquiry, would have revealed plaintiff's existence. She failed to elicit, or introduce, evidence sufficient to discharge that burden.* Consequently, it is my opinion that the trial court's judgment is clearly against the weight of the evidence, and contrary to law, with respect to the efficacy of said Company's lease as to plaintiff's interest; and, accordingly, that said court erred in holding said lease a nullity as to it.

In accord with the foregoing views, I join my Associates concurring in the opinion promulgated herein under the name of BERRY, J.